[No. 10,754.—In Bank.]
November 15, 1882.

## THE PEOPLE v. ALVINO F. PICO.

LARCENY—EVIDENCE—VARIANCE AS TO SEX.—A variance as to the sex of the animal charged to be stolen, is immaterial.

ID.—ID.—ID.—HORSE—DEFINITION.—At common law the word "horse" was used in its generic sense, and was held to include all animals of the horse species, whether male or female; and the Legislature of this State, in using the word "mare" (in Sec. 487, Penal Code), did not intend to modify or change the common law rule, but inserted the word, possibly, for more definiteness.

ID.—ID.—INSANITY—GENERAL REPUTATION.—Insanity is not to be proven by general reputation.

ID.—ID.—ID.—HEARSAY.—For the purpose of showing the insanity of the defendant, a witness testified to his throwing away a suit of clothes; but on cross-examination it appeared that the witness had no personal knowledge of the clothes being thrown away, or of the reason therefor; he knew of the circumstances only by hearsay. *Held:* The testimony was properly stricken out.

ID.—ID.—ID.—OPINION OF FAMILY.—Evidence that the defendant was always treated by his family as an imbecile or an insane person is inadmissible.

ID.—ID.—ID.—OPINION OF ACQUAINTANCES.—Witnesses were examined for the purpose of showing the sanity of defendant, and from their examination it appeared that they were acquainted with him and had more or less opportunity for acquiring knowledge on which to base an opinion.

*Held:* The witnesses having shown themselves, respectively, to have been acquainted with the defendant, the determination of the question as to whether that acquaintance was of an intimate character was within the discretion of the Court below, with the exercise of which, there being no abuse, this Court will not interfere.

ID.—ID.—ID.—INSTRUCTION—LARCENY—DEFINITION—FELONIOUS INTENT.— The Court instructed the jury: "It is further claimed that although the jury may believe the defendant took the animal in question; yet, unless at the time of such taking he then intended to steal the same, he must be acquitted.   I instruct you that if the defendant wrongfully and unlawfully and without the knowledge and consent of the owner of this animal, or of any person who could give such consent, or as a mere trespasser and wrong-doer, drove away said horse, not then intending to steal the same, but that thereafter, while still in such wrongful possession of said horse, he feloniously sold the same and appropriated the proceeds of such sale to his own use, such taking, sale, and appropriation constitute, upon the part of the defendant, the crime of larceny as fully and completely as though such felonious intention had existed in the defendant at the first taking of such animal."   *Held:* The instruction was correct.

ID.—ID.—ID.—INSANITY—DEFINITION—REASONABLE DOUBT.—The Court instructed the jury: "The standard of accountability is this: Had the party sufficient mental capacity to appreciate the character and quality of the act ?   Did he know and understand that it was a violation of the rights of another, and in itself wrong; did he know that it was prohibited by the laws of the land, and that its commission would entail punishment and penalties upon himself?   If he had the capacity thus to appreciate the character and comprehend the possible or probable consequence of his act, he is responsible to the law for the act he has committed and is to be judged accordingly.   The defense of insanity is a defense which may be and sometimes is resorted to, in cases in which the proof of the overt act is so full and complete that any other means of avoiding conviction, and escaping punishment, seems hopeless.   While, therefore, this was a defense to be weighed fairly, fully, and justly, and when satisfactorily established must recommend itself to the sense of humanity and justice of the jury, they are to examine it with care, lest an ingenious counterfeit of this mental infirmity shall furnish immunity to guilt."   "In all other matters except that of insanity, defendant is entitled to every reasonable doubt."   The Court also refused to give instructions embodying the converse of these propositions.

*Held:* The instructions were correct, and it therefore follows that the instructions asked for and refused were incorrect.

ID.—ID.—INSANITY.—When a defendant is brought up for judgment on conviction it is not error for the Court, where it entertains no doubt as to his sanity, to refuse to submit the issue of insanity to a jury, under Sec. 1368, Penal Code.

APPEAL from a judgment of conviction and from an order denying a new trial, in the Superior Court of the County of Santa Clara.  BELDEN, J.

*A. W. Crandell,* for Appellant.

*A. L. Hart,* Attorney-General, for Respondent.

MYRICK J.:

The defendant was by information accused of grand larceny, in that he "did feloniously take and steal one roan horse," the property of one S. P. Stockton. The plea was not guilty. The defendant was convicted as charged.

1. It appears from the bill of exceptions that on the trial the people gave evidence tending to prove that the defendant took from the Normal School grounds in San Jose, a roan mare, harness and buggy, belonging to S. P. Stockton, and after using the same in the public streets of San Jose, and declaring that the mare belonged to one Archer, left the harness and buggy by the side of a street, and sold the mare for ten dollars and appropriated the proceeds to his own use. The defendant moved the Court to instruct the jury to acquit him, on the ground of variance, in that he was charged with stealing a horse, while the proof showed the animal taken was a mare.

This was refused. Although the Courts of some of the States have held, under a statute similar to that or this State (Section 487, subdivision 3, Penal Code), where both words "horse" and "mare" are used, the proof must agree with the indictment as to the sex of the animal, yet, as at common law the word "horse" was used in its generic sense, and was held to include all animals of the horse species, whether male or female, we are of opinion that the Legislature of this State, in using the word "mare," did not intend to modify or change the common law rule, but inserted the word possibly for more definiteness.

2. The defendant introduced evidence tending to prove that he was insane before, at, and after the taking, and at the time of the trial. No suggestion was made by counsel then or at any time before or during the trial, that defendant was not then in a condition to be tried. The District Attorney, during the trial, inquired of counsel for defendant if he asserted that defendant was then insane, to which one of the defendant's attorneys replied that they did not, and the other

stated that they claimed he was at the time of the alleged offense and still was insane. The bill of exceptions states that, "it did not then or at any time during the trial appear to the Court that there was any doubt that defendant was not sane." The defendant's attorney asked a witness: "What do you say as to his general reputation, whether sane or insane?" An objection was sustained. Insanity is not to be proven by general reputation. The ruling was correct.

3. For the purpose of showing the insanity of the defendant, a witness testified to his throwing away a suit of clothes. On cross-examination it appeared that the witness had no personal knowledge of the clothes being thrown away, or of the reason therefor—he knew of the circumstance only by hearsay. This testimony was, on motion, stricken out. It needs no authority, save well-known principles, to show the correctness of this ruling.

4. A witness was asked if the defendant was always treated by his family as an imbecile or an insane person. Objection to this was sustained. This ruling was correct. How he was treated by his family would not tend to prove insanity; they may have been mistaken as to the condition of the subject and as to their mode of treatment; besides, the answer would be but the opinion of one person based on the opinions of others.

5. Persons were examined as witnesses on behalf of the people for the purpose of showing the sanity of defendant. Their examination showed that they were acquainted with him, and had more or less opportunity for acquiring knowledge on which was to base an opinion. The opinions of these witnesses were objected to on the ground that they had not shown themselves intimate acquaintances of the defendant. The witnesses having shown themselves respectively to have been acquainted with the defendant, the determination of the question as to whether that acquaintance was of an intimate character was within the discretion of the Court below, with the exercise of which, there being no abuse, this Court will not interfere.

6. The Court instructed the jury that the misdescription as the sex of the animal was immaterial, and was no variance. Also, as follows: "It is further claimed that although the jury may believe the defendant took the animal in question,

yet unless at the time of such taking he then intended to steal the same he must be acquitted. I instruct you that if the defendant wrongfully and unlawfully, and without the knowledge and consent of the owner of this animal, or of any person who could give such consent, but as a mere trespasser and wrong-doer drove away said horse, not then intending to steal the same, but that thereafter, while still in such wrongful possession of said horse, he feloniously sold the same and appropriated the proceeds of such sale to his own use, such taking, sale, and appropriation constitute, upon the part of the defendant, the crime of larceny as fully and completely as though such felonious intention had existed in the defendant at the first taking of such animal."

"It is further claimed on the part of the defendant that if he did in fact take, sell, and appropriate the proceeds of said property as claimed by the prosecution, he is not to be held criminally accountable for so doing by reason of his insanity at the time of such appropriation and taking.

"The standard of accountability is this: Had the party sufficient mental capacity to appreciate the character and quality of the act? Did he know and understand that it was a violation of the rights of another, and in itself wrong? Did he know that it was prohibited by the laws of the land, and that its commission would entail punishment and penalties upon himself? If he had the capacity thus to appreciate the character and comprehend the possible or probable consequences of his act, he is responsible to the law for the act thus committed and is to be judged accordingly."

"The defense of insanity is a defense which may be, and sometimes is, resorted to in cases in which the proof of the overt act is so full and complete that any other means of avoiding conviction and escaping punishment seems hopeless. While, therefore, this was a defense to be weighed fairly, fully, and justly, and when satisfactorily established must recommend itself to the sense of humanity and justice of the jury, they are to examine it with care, lest an ingenious counterfeit of this mental infirmity shall furnish immunity to guilt."

"In all other matters except that of insanity, defendant is entitled to every reasonable doubt."

The defendant asked the Court to give instructions em-

bracing the converse of the propositions contained in the foregoing instructions. The instructions given by the Court are correct; it therefore follows that the instructions asked for and refused were incorrect. (*People* v. *M'Donell,* 47 Cal. 134; *People* v. *Dennis,* 39 id. 625; *People* v. *Coffman,* 24 id. 230; *People* v. *Myers,* 20 id. 518.)

7. After the verdict of conviction, the Court fixed January 23, 1882, as the day for sentence. On that day the Court heard evidence upon the question of the defendant's insanity at that time, and the Court being in doubt upon that subject, continued the time for sentence to January 27, 1882, and directed that two competent physicians make an examination of him, and report as to defendant's insanity at that time. On the 27th, the two physicians having examined the defendant, were not fully determined whether he was sane or insane, and no report was made by them, and the time for passing sentence was postponed to January 30th. On that day defendant's counsel moved the Court to summon a jury to try the question of the present sanity of the defendant; the Court, then having no doubt as to defendant's entire sanity, denied the motion, refused to allow the question to be determined by a jury, and proceeded to pronounce the sentence.

These matters do not appear in the judgment, but are stated in a bill of exceptions. The appeal is from the judgment and from the order denying the motion for a new trial.

Conceding that upon this appeal we can review the action of the Court in denying the motion to submit to a jury the question of defendant's sanity, we do not see that an error was committed. The Court did not pronounce judgment so long as any doubt existed as to defendant's sanity. The object of the statute was accomplished. According to Section 1201, Penal Code, a defendant may show for cause against judgment that he is insane; and if, in the opinion of the Court, there is reasonable ground for believing him to be insane, the question of insanity must be tried by a jury. At the time of passing the sentence, the Court had no doubt as to the entire sanity of the defendant.

Judgment and order affirmed.

McKINSTRY, ROSS, SHARPSTEIN, and McKEE, JJ., and MORRISON, C. J., concurred.