[No. 21173. In Bank.—January 31, 1895.]

THE PEOPLE, RESPONDENT, v. PETER SCHMITT, APPELLANT.

CRIMINAL LAW—HOMICIDE—INSANITY—TIME OF TRIAL—PRESUMPTION OF SANITY—BURDEN OF PROOF.—Upon the trial of a defendant charged with murder where the defense of insanity is presented, and there was no suggestion of his insanity at the time of trial, it is proper for the court to instruct the jury that the defendant is to be considered sane at the time of the trial, and that the question to be considered by the jury is whether he was insane at the very time of the alleged commission of the homicide, of which the burden of proof is upon the defendant.

ID.—MISTAKEN LANGUAGE OF DISTRICT ATTORNEY—CORRECTION BY COURT.—The mistake of the district attorney in stating to the jury that they would be instructed by the court that they must find by preponderance of testimony that the defendant "is insane" before they could acquit him, to which the defendant excepted on the ground that the statement was not law, was properly corrected by the court by directing the jury that the only issue to be tried by them related to the insanity of the defendant at the time of the commission of the homicide, and that they must consider him as now sane, and after such correction the jury could not be misled by the error of the district attorney.

ID.—EVIDENCE OF INSANITY—HEARSAY.—A witness who has already testified as to his opinion as to the insanity of the defendant cannot be permitted to testify that he had expressed his opinion to his sister two years before the homicide, and that his sister had answered that she knew he was crazy; and no hearsay declarations of the opinion of a third party as to the insanity of the defendant are admissible in evidence.

ID.—QUALIFICATION OF WITNESS AS TO SANITY.—Whether a witness as to the sanity of defendant had such acquaintance with him and opportunity of observing him as to be qualified to express an opinion as to his sanity is a question to be determined by the trial court, and while its ruling may be reviewed upon appeal, it will not be held erroneous upon

a mere difference of opinion as to the qualification of the witness, but it must clearly appear that the decision of the trial court was wrong.

ID.—PRESUMPTION AS TO CONTINUANCE OF INSANITY.—To establish the basis of a presumption that insanity once shown to have existed continues to exist it must appear to have been of such duration and character as to indicate the probability of its continuance, and not simply the possibility, or even probability, of its recurrence, as in case of temporary insanity.

ID.—PARTIAL INSANITY—DELUSION—INSTRUCTION.—Instructions as to partial insanity which introduce the word "delusion" as a synonym of "insanity," although the word "delusion" has no proper application to the facts of the case, cannot mislead the jury.

ID.—REPETITION OF INSTRUCTION—DEGREES OF OFFENSE.—It is not necessary that the court should repeat instructions in every possible connection in which reference can be made to the degrees of the offense; but it is sufficient if such instruction is once clearly and explicitly given.

ID.—RESPONSIBILITY OF DEFENDANT—DEVELOPMENT OF INSANITY AFTER SENTENCE.—The fact that the insanity of the defendant has become fully developed since the trial, assuming it to be true, does not authorize the appellate court to act upon evidence furnished by his present demented condition, and upon that ground reverse a judgment otherwise legal, when it may be true that notwithstanding his present condition, the mental disease may not have so far progressed at the time of the homicide as to relieve the defendant from responsibility for his acts.

ID.—PUNISHMENT OF INSANE PERSON.—Under the Penal Code a person, though adjudged to punishment, cannot be punished for a public offense while insane, and his conviction of the offense does not exclude him from the state insane asylum.

APPEAL from a judgment of the Superior Court of Sutter County and from an order denying a new trial.

The facts are stated in the opinion.

*E. A. Forbes,* and *W. H. Carlin,* for Appellant.

*Attorney General W. H. H. Hart, A. C. McLaughlin,* and *A. H. Hewitt,* for Respondent.

HAYNES, C.—Appellant was charged with the murder of Mrs. Charlotte Gardemeyer, alleged to have been committed November 17, 1893, and was found guilty by the jury of murder in the first degree, with the penalty of imprisonment for life.

The fact that defendant committed the homicide was not controverted, the defense being that he was insane; and this appeal is from the judgment and from an order denying a new trial.

The motion for a new trial is based upon alleged errors in the admission and exclusion of evidence, and upon instructions given and refused, and upon a statement of law made to the jury by the district attorney during his argument.

The errors specified in the record are very numerous. Appellant's brief discusses only a few of them, and these we shall first notice.

1. That the court erred in giving instruction number 26, the material part of which is as follows: "And as I am about to conclude my instructions to you, it may aid you if I give a brief summary of the principal matters you must consider and decide. You are not to consider whether or not the defendant is insane at the present time, but you are to consider him as now sane. A person charged with crime cannot be legally tried for such crime unless he be sane at the time of the trial. The defendant has presented the issue to you that at the very time of the alleged commission of the homicide he was insane. As I have already told you, the burden of proving his insanity at that time rests upon him, because the law presumes he was then sane."

Appellant contends that this instruction invaded the province of the jury, and was equivalent to a finding of the fact that the defendant was then sane, and took from the jury the power to consider the question of the insanity of the defendant at that time as evidence tending to show that he was insane when he committed the homicide.

I think the instruction could not have been so understood.

No suggestion was made during the trial that he was then insane, nor any witnesses examined as to his sanity at that time. The court had before that instructed the jury that they were to consider "all his acts and conduct at the time of, before, and subsequent to the alleged commission of the offense as shown by the evidence."

No issue as to his sanity at the time of the trial had

been submitted to the jury under section 1368 of the Penal Code, and hence, for the purposes of the trial, he was to be considered sane, the issue being whether he was sane at the time he committed the homicide. This instruction was given by the court of its own motion, and though no suggestion had been made on behalf of the defendant that he was then insane, or that it was improper to proceed with the trial for that reason, it was proper, in view of a statement made to the jury by the district attorney in the course of his argument to the jury, and which is also specified as one of the errors for which a reversal is sought. The language used by the district attorney was this: "You will be instructed by the court that you must find by a preponderance of the testimony that the defendant *is insane* before you can acquit him." Counsel for defendant at once objected and excepted to the statement, and asked the court to instruct the jury then that the statement was not law; to which the court replied, that he would instruct the jury at the proper time. The mistake of the district attorney was thus corrected by the court, and, in view of the correction, it cannot be held that the jury were misled by his error.

B. W. H. Harstromberg, a brother of the deceased, was called by the defendant, and testified to his acquaintance with the defendant, the change in his demeanor from the time he first knew him, that the last time he saw him was about two years prior to the homicide, and that he, the witness, then considered the defendant insane. The witness was then asked by counsel for defendant whether he ever had any talk with Mrs. Gardemeyer regarding the sanity or insanity of the defendant. He answered that he had, and was asked to state what it was. He commenced to answer and was stopped by the court. Counsel for defendant then offered to prove by the witness "that at different times he went to Mrs. Gardemeyer and told her to look out for Peter Schmitt, that he was crazy and liable to become violent, and to look out for him; and that she

answered that she knew he was crazy, but she could handle him."

An objection to the offer was sustained, and defendant excepted.

I see no error in the ruling. The witness had already testified what his opinion was. If he had been permitted to testify that he had expressed that opinion to his sister two years before the homicide it could not strengthen his testimony, since whether he entertained such opinion at that time, or had expressed it, must each have stood upon his testimony alone; and as to what his sister said it was mere hearsay; and besides, not being accompanied by a statement of the facts upon which she based that opinion, the opinion itself could not be received.

What has here been said also disposes of the errors assigned upon the questions put to Swan Segerstrand, viz: "Do you know whether or not Mrs. Gardemeyer knew that defendant was crazy"? and, "Did Mrs. Gardemeyer ever tell you that the old fool was crazy, but that she could handle him"?

Ellington, a witness called by the prosecution in rebuttal, was permitted, against defendant's objection, to testify that in his opinion the defendant was sane.

Whether the witness had such acquaintance with the defendant and opportunity of observing him as to qualify him to express an opinion as to defendant's sanity was a question necessarily to be determined by the trial court, in the first instance; and, whilst this court has the unquestioned right to review the ruling in that regard, it will not be held erroneous upon a mere difference of opinion, but it must clearly appear that his decision upon the point was wrong. Something must be conceded to the intelligence of the witness and his habits of observation, and of these qualifications the trial court can better judge. (*People* v. *Pico*, 62 Cal. 50.) Upon the facts stated by the witness his opinion was entitled to some consideration, as it tended in some measure to show the mental condition of the defendant down to

a time shortly before the homicide, the weight to be given it by the jury being controlled by the facts upon which his opinion was based.

It is also contended that the court erred in refusing to give the following instruction requested by the defendant: " I further instruct you that if you find from the evidence in this case that the defendant was insane at a period before the homicide in question, then, and in that case, his insanity is presumed to have continued up to the time of the homicide, provided the exciting cause of such insanity also existed up to and at the time of the homicide."

This instruction was properly refused. In *People* v. *Francis*, 38 Cal. 183, there is an instruction identical with the one under consideration, if the latter clause commencing with the word " provided " had been omitted.   The court there said:

" If the term 'insanity,' as employed in these instructions, is to be construed as referring to a general unsoundness of the mind, and not to an aberration of a temporary nature proceeding from some transient cause, then the instructions correctly stated the law. If it be shown that the intellectual faculties were so impaired as to produce a general, habitual derangement of them, not traceable to some temporary cause, the law would presume the mind to have continued in the same condition until the contrary was shown.   In Wharton's Criminal Law, section 55, the rule is thus stated: ' When habitual insanity is proved to have existed prior to the commission of an act, it will be presumed to have continued, unless the contrary be proved, down to the specific time.   It is otherwise, however, when the proof is of temporary or spasmodic mania.' "

The language used by the court, above quoted, is subject to criticism so far as it refers to insanity " produced by a temporary cause" or " transient cause," since permanent or long-continued insanity may result from a transient or temporary cause, whilst a continuing cause may produce only temporary insanity.   The point of

the opinion, however, is right. To establish the basis of a presumption that insanity, once shown to have existed, continues to exist, it must appear to have been of such duration and character as to indicate the probability of its *continuance,* and not simply the possibility, or even probability, of its recurrence, as would be the case if its existence appeared to be temporary. Because the request was not qualified, as above indicated, it was properly refused. (See, also, *People* v. *Smith,* 57 Cal. 130.)

Exceptions were also taken to the twenty-second, twenty-third, and twenty-fourth instructions given at the request of the prosecution.

These instructions introduce the word " delusion," but the connection in which it is used shows that it was intended as an equivalent expression for " partial insanity." The twenty-second instruction starts with the expression: " When partial insanity is relied upon," etc.; the twenty-third uses the expression, " partial insanity or delusion"; and the twenty-fourth, " in cases of partial delusion." It is also clear that by " partial insanity" is there meant insanity upon a particular subject or as to a particular matter. The twenty-third instruction explains this meaning very clearly, as follows:

" In cases of partial insanity or delusion as to certain facts and matters, and the accused as to other facts and matters is sane," etc.

If the defendant was insane it was not a case of insane delusion, but the cause was an existing fact. There was evidence, however, tending to show that the defendant had " spells" when he did not appear or act as he did on other occasions; and, as appeared from the testimony of the witness Ellington, that, when engaged in assisting him in repairing the pump on the several occasions mentioned, he acted intelligently and he considered him perfectly sane. The use of the word " delusion," whilst it had no proper application to the facts of the case, could not have misled the jury, since the evidence and the connection in which the word was used made clear the sense in which it was used.

The exception to the twenty-first instruction is not well taken. It is true this instruction did not refer to the degrees of the crime charged in the information, but the court explicitly instructed the jury upon that subject, and defined the different degrees of murder, and expressly informed them that the defendant might be convicted of either, or, if in their judgment the facts warranted it, of manslaughter. It is not required that the court shall repeat such instruction in every possible connection in which reference could be made to the degrees of the offense. If once clearly and expressly given, it is sufficient.

No other points are discussed in appellant's brief, though other errors are specified in the record. A careful examination of them, however, discloses none requiring a reversal of the judgment or order appealed from. The facts disclosed by the evidence must appeal strongly to the sympathies of any one who reads the record, and justify the earnestness and evident sincerity with which the learned counsel for appellant have presented his case. The statement in appellant's opening brief that the condition and mental state of the defendant is " daily nearing the hopeless shores of idiocy" is not noticed in respondent's brief; and in appellant's closing brief counsel say: "As matter of fact, at the very time of the trial the defendant was rapidly approaching dementia, and at the present time lies in the county jail of Sutter county under sentence, a gibbering and demented idiot."

Assuming this to be true, it is probable that the defendant was not responsible at the time of the homicide, and, if so, should have been acquitted; but it is equally true that notwithstanding his present condition the mental disease may not have so far progressed at that time as to relieve him from the fearful responsibility of his acts. This court, however, cannot act upon the evidence furnished by his present condition, and upon that ground reverse a judgment otherwise legal. The humanity of the law has, however, provided for such

cases. A person, though adjudged to punishment, cannot be "punished for a public offense while insane." (Pen. Code, sec. 1367.) His conviction and sentence does not exclude him from the state insane asylum, and beyond that, executive clemency has power to relieve, even where the courts cannot.

I advise that the judgment and order appealed from be affirmed.

SEARLS, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

HARRISON, J., McFARLAND, J.,
GAROUTTE, J., VAN FLEET, J.