8/LRA727n

[Crim. No. 168.   In Bank.—December 9, 1896.]

# THE PEOPLE, RESPONDENT, *v.* DENNIS McCARTHY, APPELLANT.

| 115 | 255 |
| 116 | 569 |
| 115 | 255 |
| 120 | 11 |
| 115 | 255 |
| 122 | 123 |
| 115 | 255 |
| 132 | 331 |
| 115 | 255 |
| 134 | 12 |
| 134 | 13 |
| 115 | 255 |
| e141 | 596 |
| 141 | 598 |
| 115 | 255 |
| 142 | 338 |
| e142 | 339 |
| 142 | 361 |
| 142 | 365 |

CRIMINAL LAW—HOMICIDE—INSANITY—REBUTTAL—COMPETENCY OF WITNESSES—"INTIMATE ACQUAINTANCE"—DISCRETION.—Upon the trial of a defendant accused of murder, where the sole defense is the insanity of the defendant at the time of the homicide, and rebutting evidence of his sanity is offered by the prosecution, the question of the competency of the rebutting witnesses by reason of their "intimate acquaintance" with the defendant, is one of large discretion of the trial judge in determining whether the evidence in any instance brings the witness within the rule of the statute, and his ruling will not be disturbed, except where the evidence is so lacking as to leave no just room for question that the discretion has been improperly exercised.

ID.—STATEMENT OF WITNESS AS TO ACQUAINTANCE.—The sufficiency of the acquaintance of a witness with the defendant to enable him to testify as to his sanity is a question for the judge, and not for the witness; and the fact that the witness stated that he did not regard himself as intimately acquainted with the defendant, does not make the admission of his evidence upon the question of sanity of the defendant erroneous, where the facts developed upon his examination justified the admission of the evidence.

ID.—RATIONAL APPEARANCE OF DEFENDANT—PREVIOUS ACQUAINTANCE NOT ESSENTIAL—TESTIMONY OF JAILER—SUBSEQUENT ACQUAINTANCE.—Previous acquaintance is not required in order to enable a witness to testify to the rational appearance of the defendant at a particular time; and, upon the question of the permanent insanity of the defendant, it is not error to permit the jailer, who received the defendant at the county jail on the day of his arrest, to testify that he appeared rational at that time, and the subsequent acquaintance and intimate knowledge of the jailer as to the defendant's manner and mental condition, also affords ground for the admission of such testimony, as well as for testimony to his condition while in jail.

ID.—REBUTTAL OF PERMANENT INSANITY—CONDUCT AND APPEARANCE IN JAIL.—When the evidence for the defense upon the subject of insanity tends to show a general and permanent state of dementia and diseased condition of mind in the defendant, testimony as to his rational and sane conduct and appearance while in jail, is admissible in rebuttal, and is relevant and material to the issue before the jury.

ID.—PRESUMPTION—SANITY AT TIME OF TRIAL—BURDEN OF PROOF AS TO DEFENSE OF INSANITY—INSTRUCTION.—It is proper to instruct the jury that they are to consider the defendant sane at the time of trial; and that the burden of proving the defense of insanity at the time of the alleged homicide is upon the defendant.

ID.—KNOWLEDGE OF NATURE OF ACT—IRRESISTIBLE IMPULSE NO DEFENSE. Where the defendant knows fully the nature of his act, the doctrine that he could not prevent it through paralysis of the will power, or

through uncontrollable or irresistible impulse, has no legal standing in this state, and is not a legal defense to crime.

ID.—MORAL INSANITY NOT RECOGNIZED.—In our courts there is no such doctrine established or recognized as moral insanity, distinguished from mental derangement, as an excuse for crime, and as an exemption from punishment therefor.

ID.—SCRUTINY OF DEFENSE OF INSANITY—INSTRUCTION.—In a proper case, the jury may be instructed that they should thoroughly and carefully weigh the defense of insanity, and examine into it with great care, lest an ingenious counterfeit of the malady furnish protection to guilt; but in giving such instruction, when essential, the court should be careful to follow approved language; but it should be rarely given, and, in most cases, it is better not to give it, though it can do no harm where the defense of insanity is lacking in material substance.

ID.—MOTIVE FOR HOMICIDE—MORBID THIRST FOR BLOOD—INSTRUCTION. Where the defense of insanity is relied upon in a case of homicide, and the motiveless character of the act is relied upon, it is proper to instruct the jury that the circumstance of the act being apparently motiveless is not a ground from which they can safely infer the existence of a powerful and irresistible influence or homicidal tendency; the unknown motives might prompt the act, and a morbid and restless thirst for blood would itself be a motive urging to such a deed, for its own relief.

APPEAL from a judgment of the Superior Court of Sonoma County and from an order denying a new trial. R. F. CRAWFORD, Judge.

The facts are stated in the opinion of the court.

*Farquar & Hall*, for Appellant.

Witnesses Frost, Pool, Weise, Thurston, and Dougherty were incompetent to testify as to the mental sanity of defendant, not being intimate acquaintances of defendant. (Code Civ. Proc., sec. 1870; *Estate of Carpenter*, 94 Cal. 414.) Whether or not defendant, at the time of the trial, was sane is a matter of fact for the jury to decide. (Const., art. VI, sec. 19.) Instruction 18 goes dangerously far beyond the one in *People* v. *Pico*, 62 Cal. 54.

*W. F. Fitzgerald*, Attorney General, *Henry E. Carter*, Deputy Attorney General, and *C. N. Post*, Deputy Attorney General, for Respondent.

The testimony of witnesses Pool, Thurston, and Weise as to defendant's appearance at Crooks, shortly after the shooting, was admissible to show whether defendant appeared rational or otherwise. (*People* v. *Lavelle*, 71 Cal. 352; *Holland* v. *Zollner*, 102 Cal. 633.) Evidence of the acts and conduct of a defendant, prior to, at the time of, and subsequent to the commission of an offense, is admissible, where the defense relied on is insanity. (*People* v. *Lee Fook*, 85 Cal. 300; *People* v. *Schmitt*, 106 Cal. 50; *People* v. *Farrell*, 31 Cal. 576; *United States* v. *Guiteau*, 10 Fed. Rep. 161; *State* v. *Lewis*, 20 Nev. 333; 3 Rice's Criminal Evidence, 680.) Instruction No. 10, in regard to the character of insanity which would constitute a defense, was upheld by this court in *People* v. *Schmitt, supra.* Instructions Nos. 13, 14, and 19 properly state the law (*People* v. *Hoin*, 62 Cal. 120; 45 Am. Rep. 651); so does instruction No. 18. (*People* v. *Pico*, 62 Cal. 54.)

Van Fleet, J.—The defendant was convicted of murder of the first degree, committed in the killing of one George Fox, and was sentenced to be hanged. He appeals from the judgment and from an order denying him a new trial.

The defense was insanity, the homicide being admitted, and the exceptions urged are based upon certain rulings made on the admissibility of evidence, and directions in law to the jury, bearing upon that defense, which it is claimed were erroneous.

1. Of the objections to rulings upon evidence, the point most relied upon involves several exceptions of the same character arising on the admission by the trial judge of the testimony of a number of witnesses introduced by the prosecution to rebut the showing made by defendant on the subject of his sanity. The objection, in each instance was, that the testimony was incompetent because the witness was not an "intimate acquaintance" of defendant, under subdivision 10 of section 1870 of the Code of Civil Procedure. Each of these wit-

nesses was examined preliminarily as to the extent and character of his previous acquaintance with the defendant, before any questions were put touching the subject of defendant's mental soundness, and, in overruling the objection made, the trial judge necessarily passed in each instance upon the sufficiency of the evidence to show that degree of intimacy which would render the witness competent. In the determination of this question, as in that of any other fact from oral evidence, he, of necessity, must be conceded to be the best judge of what the evidence shows, since he has before him many elements of fact which cannot be transmitted to paper, but which enable him to more correctly weigh the evidence, and exercise a wiser discrimination as to what it shows than one who reads but a naked statement of the evidence, without the presence of the witness. And so it has been held, and wisely, that the trial judge is to be accorded wide discretion and latitude in this respect; and his ruling will not be disturbed except where the evidence is so lacking as to leave no just room for question that the discretion has been improperly exercised. (*People* v. *Pico*, 62 Cal. 53; *Estate of Carpenter*, 94 Cal. 414; *People* v. *Lane*, 101 Cal. 516; *People* v. *Schmitt*, 106 Cal. 52.)

The appellant does not undertake to point out with any particularity the deficiencies of the evidence in any instance, but contents himself with the general statement that it is insufficient to show intimate acquaintance, within the rule laid down by this court in *Estate of Carpenter*, *supra*. But, while that case discusses and defines what the words "intimate acquaintance," as used in the statute, mean, it does not undertake to prescribe any measure of proof by which that relationship is to be determined. And, in the nature of things, it would be difficult to do so. After a discussion of the meaning of the statute it is there said:

"Now, when we take into consideration the rule as it exists in most jurisdictions where the common law prevails, we must conclude that our code has attempted

what has been said to be impracticable, to establish a rule as to what opportunities of observation shall entitle a witness to speak. A nonexpert may testify, but only if he has had these advantages which I have attempted briefly to specify, notwithstanding the statutory attempt. Since it requires the drawing of a definite line between things which are separated only by degrees of difference, the rule is and must remain more or less indefinite. A very large discretion must be conceded to the trial court. If the conclusion reached is one which can be reasonably entertained, consistently with the above idea of intimacy, this court cannot review the ruling."

So it will be seen that that case leaves the question of competency practically where it found it—a question of large discretion in the trial judge to determine whether the evidence in any instance brings the witness within the rule of the statute.

With this principle in view we have carefully examined the testimony of each witness objected to, and, without stating it in detail, we think there was a showing in every instance which would preclude us from saying that the ruling of the learned judge of the court below was unwarranted. In each instance there was shown an acquaintance between the witness and the defendant, of a greater or less degree of intimacy, extending over a period of several weeks—a period more than sufficient, so far as time is concerned, to afford one the opportunity of forming an intelligent judgment of the condition and bent of defendant's mind; and, as suggested in *People* v. *Schmitt, supra:* " Something must be conceded to the intelligence of the witness and his habits of observation, and of these qualifications the trial court can better judge."

It is true that one of the witnesses (Thurston) stated that he did not regard himself as intimately acquainted with defendant, but that was a question for the judge and not the witness; and the facts developed upon his examination justified, we think, the admission of his evidence.

The witness Weise, the jailer who received defendant at the county jail, on the day of his arrest, was permitted to testify that defendant appeared "rational" at that time. The witness had had no previous acquaintance with the defendant, and it is contended that the evidence was incompetent. But under the rule declared in *People* v. *Lavelle*, 71 Cal. 352, and *Holland* v. *Zollner*, 102 Cal. 633, the evidence was unobjectionable. It is there held that the question of the mere manner or appearance of a person at a particular time does not fall within the rule which requires the witness to be an "intimate acquaintance" in order to be competent to testify. Moreover, we think the opinion of the witness is to be regarded as having been formed more upon his subsequent acquaintance with, and knowledge of, defendant, acquired during the months that the latter remained under his charge in the county jail, than upon the mere appearance of defendant when first brought to the jail. The evidence shows that the witness had a very excellent opportunity, of which he availed himself, to acquire an intimate knowledge and form an intelligent judgment of defendant's manner and mental condition, and we think, upon this ground, that the evidence was admissible.

The further evidence of this witness, and that of Dougherty, another jailer, as to the conduct of defendant while in the jail, and the apparent condition of his mind during that time, was clearly admissible in rebuttal of the showing of a general and permanent state of dementia and diseased condition of mind in the defendant, which the evidence in behalf of the latter had tended to establish, and was relevant and material to the issue before the jury. (*People* v. *Lee Fook*, 85 Cal. 300.)

The objection to the question asked witness Pool was properly overruled, within the doctrine of *People* v. *Lavelle*, *supra*, above adverted to.

There are some other exceptions under this head, noted in a very general way in appellant's brief, but

which counsel has not argued, either in the brief or orally. We have carefully examined them, however, more by reason of the gravity of the offense and the extreme consequences to defendant of this appeal, than in the expectation of finding them possessed of merit. They do not demand separate notice, but it is sufficient to say that they involve no error.

2. The court correctly instructed the jury as to the character of insanity which would constitute a defense to the charge, and, in connection therewith, gave this instruction: " You are not to consider whether or not the defendant is insane at the present time, but you are to consider him as now sane. A person charged with crime cannot be legally tried for such crime, unless he be sane at the time of the trial. The defendant has presented the issue to you that, at the very time of the alleged commission of the homicide, he was insane. As I have already told you, the burden of proving his insanity at that time rests upon him, because the law presumes he was then sane."

A precisely similar instruction, from which the present one was evidently taken, was given in *People* v. *Schmitt, supra,* and it was contended there, as it is here, that it was erroneous as an invasion of the province of the jury, in virtually withdrawing from them the right to consider the question of defendant's sanity, at the time of the trial, as a factor in determining whether he was sane at the time of the homicide. But it was held that the instruction could not be regarded as having that effect; that no question having been made or issue submitted as to the defendant's sanity at the time of the trial, "for the purposes of the trial he was to be considered sane, the issue being whether he was sane at the time he committed the homicide." And, further, that the court having properly charged the jury that in determining whether defendant was sane at the time of the homicide they should consider all his acts and conduct, both before, at the time of, and since the act, the instruction could not have been under-

stood by the jury as interfering with that right. The same reasoning applies here; no issue was made or suggested as to the defendant's sanity at the time of his trial, and, as in the above case, the jury were properly charged as to their right to consider all the evidence bearing upon the question of insanity. In fact, taken in connection with the whole charge, we regard the instruction as doing no more than informing the jury that the issue submitted to them was that of defendant's sanity *at the date of the homicide;* and that, for the purposes of the trial, he was to be considered sane, since only a sane man can be competently put upon trial for an offense.

It is further suggested in *People* v. *Schmitt, supra,* that the instruction was evidently given to correct an erroneous suggestion made in the argument of counsel, and for that purpose was proper. It does not appear whether any such fact occurred in this case, but, the record being silent, we should presume, if necessary to sustain the action of the court, that a like necessity existed. Error must be shown, and, where the record is silent as to the fact, an instruction will not be held erroneous unless it would be so held under any conceivable state of the case.

Defendant also objects to instructions 13 and 14, and 18 and 19, which were as follows:

"13. I instruct you 'that the doctrine that, in some forms of insanity the patient or sufferer knows the nature of his act fully, but, at the same time, cannot prevent it, through paralysis of the will power, and which is sometimes known as uncontrollable or irresistible impulse, has no legal standing in this state, and is not a legal defense to crime.' "

"14. In our courts of law, there is no such doctrine established or recognized as moral insanity distinguished from mental derangement, as an excuse for crime, and as an exemption from punishment therefor. There is no such type of insanity recognized in our courts as, for instance, that a person may steal your property, burn

your dwelling, murder or attempt to murder you, and know at the time that the deed is a criminal act, and wrong in itself, and deserves punishment, having the ability to correctly reason on the subject; and yet be held guiltless and not punishable, on the ground solely of a perversion of the moral sense."

" 18. In prosecutions for crimes the defense of insanity is often interposed, and thereby becomes a subject of paramount importance in criminal jurisprudence· A due regard for the ends of justice, and the peace and welfare of society, no less than mercy to the accused, require that it should be thoroughly and carefully weighed. It is a plea sometimes resorted to in cases where aggravated crimes have been committed, under circumstances which afford full proof of the overt acts, and render hopeless all other means of evading punishment. While, therefore, it ought to be viewed as a not less full and complete, than it is a humane, defense, when satisfactorily established, it yet should be examined into with great care, lest an ingenious counterfeit of the malady furnish protection to guilt."

"19. It has been urged for the prisoner that you should acquit him on the ground that, it being impossible to assign any reason for the perpetration of the offense, he must have been acting under what is called a powerful and irresistible influence or homicidal tendency. But I must remark as to that, the circumstances of an act being apparently motiveless is not a ground from which you can safely infer the existence of such an influence. Motives exist unknown and innumerable which might prompt the act. A morbid and restless (but irresistible) thirst for blood would itself be a motive urging to such a deed for its own relief."

Appellant, in his brief, says that, while the suggestions contained in instructions 13, 14, and 19 might be proper as matters of argument to the jury, they were not proper as statements of law from the judge. The basis upon which counsel draws this distinction he does not disclose, but we apprehend that, aside from a dis-

cussion of the evidence, whatever may be correctly stated by counsel in argument to the jury, as a legal guide to facilitate their deliberations, must necessarily be held proper matter for instruction by the judge, since the latter is the source from which the jury are to receive their guidance in the law. But, moreover, the principles embodied in these instructions have been expressly approved of as correct statements of the law of insanity as a shield for crime. (*People* v. *Hoin*, 62 Cal. 120; 45 Am. Rep. 651.)

At the oral argument, appellant made the further objection to these instructions that they had no application to the circumstances or facts of this case or the character of the defense, and hence were a mere statement of negative matter which was misleading and improper to lay before the jury, and calculated to prejudice defendant's case. But the statement by the judge in instruction 19, of what had been urged before the jury, shows that matters of exactly the nature referred to in the instructions had been argued to them. It is as much the duty of the judge in his charge to protect the jury against being misled by improper or misleading statements or claims made in the argument as to the law which should govern them, as it is to correctly state the affirmative propositions of law arising upon the evidence.

Instruction 18 is substantially the same as one which has received the repeated approval of this court. (See *People* v. *Dennis*, 39 Cal. 625, *People* v. *Bumberger*, 45 Cal. 650, *People* v. *Pico*, *supra*, and *People* v. *Larrabee*, *ante*, p. 158.) Appellant claims that it goes beyond the one given in those cases, but, in what respect, he does not point out, and we are unable to perceive wherein it transgresses the rule as there declared. While couched in language slightly different, it nevertheless expresses the same idea and means the same thing.

We would suggest, however, that where it is deemed essential by the trial judge to give an instruction upon this point, it would be the part of wisdom to follow ap-

proved language. We think, in fact, it would be better, in most cases, if the instruction were omitted altogether; and, indeed, if its propriety were an open question, we should be much inclined to doubt it. While the general principles which it states are no doubt those which should control the jury in passing upon such defense, the case must be a rare one where their suggestion is really demanded. Juries are, as a rule, ready and intelligent in distinguishing between the genuine and the simulated in any defense presented for their consideration, while the danger in making such suggestions, however abstract in their terms, is that they may possibly be seized upon as intended by the judge to intimate and characterize his opinion of the case on trial—a result almost necessarily prejudicial to defendant, and, in effect, a trespass upon the constitutional right of the jury to pass upon the facts free from the influence of the judge.

In the present case, however, we are relieved of any anxiety as to the effect of this instruction, since we are unable to conceive, in view of the circumstances of the case, how defendant could possibly have been prejudiced thereby. The killing was an exceptionally cold-blooded and wanton one, inflicted upon a defenseless man from no other cause, so far as manifest, than a feeling of petty spite and jealousy having no just foundation; while the evidence relied upon to establish the defense of insanity was so entirely lacking in material substance as that no unbiased jury, themselves enjoying the blessing of sane and reasoning minds, could have justly reached a different conclusion.

From a review of the whole record we are satisfied that no error exists which should operate to set the verdict aside, and the judgment and order must therefore be affirmed.

It is so ordered.

HARRISON, J., McFARLAND, J., HENSHAW, J., and GAROUTTE, J., concurred.

TEMPLE, J., dissented.