STATE, RESPONDENT, *v.* PENNA, APPELLANT.

(No. 2,413.)

(Submitted June 14, 1907. Decided June 28, 1907.)

[90 Pac. 787.]

*Criminal Law—Homicide—Insanity—Opinion Evidence—Witnesses—Competency—Credibility—Instructions—Good Character.*

Criminal Law—Homicide—Insanity—Opinion Evidence—Competency—Witnesses.
1. Evidence of nonexpert witnesses on the question of the sanity of the defendant in a prosecution for homicide, to be admissible, must, under section 3146 of the Code of Civil Procedure, be based upon an *intimate* acquaintance with him, and the witnesses must state the facts upon which their opinions are founded.

Same.
2. *Held,* in a capital case, that the acquaintanceship acquired with the defendant by newspaper reporters during an interview lasting a half hour, within a few hours after the killing, was not such as to bring them within the rule laid down in section 3146, Code of Civil Procedure, and hence that their evidence, declaring the defendant sane, was inadmissible.

Same—Insanity—Witnesses—Competency—Discretion—Review.
3. *Obiter:* The determination of the question whether a nonexpert witness had an *intimate* acquaintanceship with a person on trial for homicide, so as to qualify him to testify as to his sanity, rests in the discretion of the district court, subject to review only in case of a clear abuse of such discretion.

Same—Reason for Opinion.
4. Error was committed by the district court in refusing to permit a nonexpert witness, who had some acquaintance, gained by a limited intercourse as a customer in the witness' saloon, with the defendant, charged with homicide, to be cross-examined concerning the reasons for his opinion that defendant was sane.

Same—Insanity—Hearsay Evidence.
5. It was error to permit witnesses, in a prosecution for homicide in which the defense interposed was insanity, to testify, for the purpose of rebutting evidence introduced by defendant tending to show that his father was insane and had on two occasions attempted suicide, that they knew the father of defendant, but had never heard of any attempted suicide on his part. The testimony was hearsay and incompetent.

Same.—Insanity—How It cannot be Proved.
6. Insanity of a person cannot be proved by reputation, nor can his sanity be shown by proving the fact that such person has not the reputation of being insane.

Same—Evidence—Review—Record—Offer of Proof.
7. Alleged error in the exclusion of a question propounded to a

physician on the question of the insanity of the defendant in a trial for homicide is not subject to review where counsel did not complete the question, because of an interruption by the state's attorney, nor make an offer of what counsel intended to prove by the witness.

Same—Instructions—Harmless Error.

8. Defendant, charged with murder in the first degree, to which the only defense interposed was insanity, was not prejudiced by an instruction defining heat of passion, since under it, taken in connection with that defining manslaughter, also given, the jury might have concluded that they would be justified in finding a verdict of guilty of the latter crime, whereas, if not insane, he was guilty of murder.

Same—Erroneous Instructions—Credibility of Witnesses.

9. An instruction charging the jury on a trial, for murder, that if they were satisfied that any witness had knowingly and willfully testified falsely in any material matter, they had the right to reject the whole of his testimony, ''unless on any point such testimony is corroborated by the facts and circumstances of the case or other credible evidence,'' is an unauthorized restriction upon the discretionary power of the jury to reject testimony, and should not be given in any case, in view of section 3390 of the Code of Civil Procedure, which provides that the jury shall be instructed on all proper occasions, ''that a witness false in one part of his testimony is to be distrusted in others.''

Same—Erroneous Instruction—Credibility of Witnesses—When Harmless Error.

10. Where the jury had been repeatedly charged that they were the exclusive judges of the weight to be given to the evidence adduced before them in a capital case, the instruction, mentioned in the foregoing paragraph, restricting in an unauthorized manner the discretionary power of the jury to reject testimony, could not have affected the rights of the defendant prejudicially.

Same—Misleading Instruction—Good Character of Defendant.

11. The submission of an instruction to the effect that the jury could consider the good character of the defendant, on trial for murder, as a fact or circumstance tending to establish his innocence, was misleading and prejudicial, where no evidence had been introduced on the subject; the jury may have understood from this instruction that in the absence of such evidence they should find against defendant on this point.

*Appeal from District Court, Silver Bow County; Michael Donlan, Judge.*

HARRY PENNA was convicted of murder, and he appeals from the judgment and from an order denying a new trial. Reversed and remanded.

*Messrs. Mackel & Meyer,* for Appellant.

''A question as to how a designated person appeared at a certain date with reference to soundness or unsoundness of mind

cannot properly be put except to a medical expert." (*Wyman* v. *Gould,* 47 Me. 159; *Commonwealth* v. *Wilson,* 1 Gray, 339.) While we do not wish to be understood as contending that a non-expert cannot give his opinion as to the sanity or insanity of a defendant, in view of the decision in *State* v. *Peel,* 23 Mont. 358, 75 Am. St. Rep. 529, 59 Pac. 173, we do maintain that before a nonexpert can give such testimony, he must, at least, first state the facts upon which his opinion or conclusion is based, and these facts must be founded upon his personal observation or knowledge. (1 Elliott on Evidence, secs. 672-681, and cases cited; *Tucker* v. *State,* 89 Md. 471, 43 Atl. 780, 44 Atl. 1004. 46 L. R. A. 181; *Bothwell* v. *State,* 71 Neb. 747, 99 N. W. 670; *People* v. *Strait,* 148 N. Y. 566, 42 N. E. 1045.)

The court erred, in giving instruction No. 27, by modifying the statutory provision. (Code Civ. Proc., sec. 3390.) It imported into the section a meaning not intended by the legislature. (*Brown* v. *Griffith* (Cal.), 9 Pac. 425; *People* v. *McCoy,* 71 Cal. 395, 12 Pac. 272; *People* v. *Clark,* 84 Cal. 573, 24 Pac. 313; *People* v. *Paulsell,* 115 Cal. 6, 46 Pac. 734; *People* v. *Plyler,* 121 Cal. 160, 53 Pac. 553; *People* v. *Arlington,* 131 Cal. 231, 63 Pac. 347; *People* v. *Fitzgerald,* 138 Cal. 39, 70 Pac. 1014; *People* v. *Stevens,* 141 Cal. 488, 75 Pac. 62.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondent.

Instruction No. 27 has been discussed and approved by this court, and by other courts. (*State* v. *Lee,* 34 Mont. 584, 87 Pac. 977; *State* v. *DeWolf,* 29 Mont. 415, 74 Pac. 1084; *Pierce* v. *State,* 53 Ga. 369; *State* v. *Fuller,* 34 Mont. 12, 85 Pac. 369; *State* v. *Durant,* 116 Cal. 179, 48 Pac. 75.

Instructions faulty or technically erroneous will not work a reversal of a judgment if the jury were not misled, or, if as a whole, the case was fairly presented to them, and especially if their verdict is obviously correct. (Thompson on Trials, sec. 2431; *State* v. *Fuller,* 34 Mont. 12, 85 Pac. 369; *Miller* v. *State,*

3 Wyo. 657, 29 Pac. 136; *Harris* v. *State,* 30 Ind. 131; *Jones* v. *State,* 92 Ga. 480, 17 S. E. 859; *Ballard* v. *State,* 31 Fla. 266, 12 South. 865; *State* v. *Gutt,* 13 Minn. 341 (Gil. 315); *Cheney* v. *Field,* 114 Ill. App. 597; *Long* v. *People,* 102 Ill. 331; *People* v. *Scott,* 6 Mich. 287; *Parchen* v. *Peck,* 2 Mont. 567.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant was convicted of murder of the first degree and condemned to death. His motion for a new trial having been denied, he appeals to this court from the judgment of conviction and from the order denying him a new trial.

No question is made that the evidence is insufficient to sustain the verdict. The propriety of the judgment is assailed upon the ground of alleged errors in rulings upon the admissibility of evidence during the examination of jurors, and in disallowing challenges, upon the admissibility of evidence during the submission of the case to the jury, and upon certain instructions submitted to the jury, and the refusal of others requested. Since the judgment and order must be reversed, and a new trial granted, it will not be necessary to notice the errors alleged in connection with the selection of the jury. These will not probably occur again.

A brief history of the homicide is the following: Several years ago, Robert Bryant, the husband of the deceased, came from Cornwall, England, to Butte, where he has since resided. The wife, Susie, remained in Cornwall with their children until about the first of the year 1905, when she joined her husband in Butte. During his absence in America she became acquainted with the defendant, who also lived in Cornwall, and who became enamored of her. Soon after she came to America, he followed her, coming from Australia, whither he had gone in the meantime. There is some evidence in the record which tends to show that he was moved to come to America by some sort of inducements held out to him in letters written by her to him in England

and Australia. Whether his intimacy with her was renewed after he reached Butte does not appear; but, apparently, he then, for the first time, learned that she was married and had children. After he came to Butte, he saw her from time to time, but how often and under what circumstances the evidence does not show. Having obtained work in one of the smelters, he pursued his employment until April 27, 1906, the day before the killing. He then gave up his place, announcing to the foreman that he was about to return to Australia. About 9 o'clock on the next morning he armed himself with a revolver and went to the home of the deceased. Having rapped at the door, he was there met by the deceased. After a few words with her, he drew his pistol and shot her three times, inflicting mortal wounds from which she died the same day. Little is known of what took place between the two at that time. The only eye-witness was a small boy, who stated that he did not hear the conversation, except that, when the deceased first opened the door, the defendant inquired for a friend of his who roomed in the same building where the deceased resided. As he ran away from the scene of the shooting, the defendant was met by a policeman, to whom he said, in reply to an inquiry why he was running, that he had killed a "lady." He was then arrested.

At the trial the fact of the killing and the attendant circumstances were not controverted. The defense relied upon was insanity. In support of this defense a great deal of evidence was introduced tending to show that the father of the defendant was insane, and also two of his paternal uncles. There was also the evidence of two physicians who had personally examined the defendant, and several lay witnesses, who, after stating their acquaintance with, and observation of, the defendant after he came to America, all expressed the opinion that he was insane. To rebut this evidence three lay witnesses, Berry, Cooney, and O'Malley, were allowed, over objection of the defendant, to express their opinion that he was sane. These witnesses, being newspaper reporters, interviewed the defendant for their respective papers within two hours after the shooting. Their only

acquaintance with him was such as they obtained during these interviews. They had never seen the defendant before, and knew nothing of his history, except what they learned from him at the time. The interviews consumed about a half hour. The point is made that this evidence was incompetent and should have been excluded.

Under the common law in England the opinion of any layman, who was acquainted with the person whose sanity was in question, and who had observed his conduct, was admitted without question. (3 Wigmore on Evidence, sec. 1933.) In the United States the courts have entertained a diversity of views, some of them holding that such witnesses should be limited to a statement of the facts coming within their knowledge, and that it should be left to the court or jury to draw the proper inference of sanity or insanity. Others have adopted the rule that, not only may the witnesses state the observed facts, but may also state their opinions, thus laying before the court or jury the inference which they themselves have drawn from these facts. The courts entertaining this latter view proceed upon the theory that it is often so difficult to describe what the witnesses see, that the exclusion of their statements as to the inference drawn by them from the facts observed is to refuse to consider one of the most important sources of evidence. The propriety of the two rules is discussed by Mr. Wigmore under the above citation, and the cases are there collated.

The second rule was adopted by the Montana territorial court in *Territory* v. *Hart,* 7 Mont. 489, 17 Pac. 718, and has been followed since. (*Territory* v. *Roberts,* 9 Mont. 12, 22 Pac. 132; *State* v. *Peel,* 23 Mont. 358, 75 Am. St. Rep. 529, 59 Pac. 169.) In order to settle any controversy on the subject, and following the course pursued by some of the states, the legislature in 1895 incorporated in the Code of Civil Procedure section 3146, which provides: ''In conformity with the preceding provisions, evidence may be given upon a trial of the following facts: * * * (10) The opinion of a subscribing witness to a writing, the validity of which is in dispute, respecting the mental sanity of

the signer; and the opinion of intimate acquaintanceship respecting the mental sanity of a person, the reason for the opinion being given."

By a comparison of this provision with subdivision 10 of section 1870 of the California Code of Civil Procedure, we find that the latter declares that the opinion of an *intimate* acquaintance may be admitted, the reason therefor being given; while our own declares that the opinion of intimate acquaintanceship may be admitted, the reason therefor being given. Evidently, our legislature, in copying the California statute, inadvertently substituted the word "acquaintanceship" for "acquaintance." But, be this as it may, the purpose of the two provisions is the same, and that is, to limit such testimony to those witnesses only who have *intimate* acquaintance with the person whose mental sanity is in question, and requiring even these, except when they are subscribing witnesses, to state the facts upon which the opinion is founded.    Other lay witnesses are confined to a statement of their observations.   (*People* v. *Lavelle,* 71 Cal. 351, 12 Pac. 226; *Holland* v. *Zollner,* 102 Cal. 633, 36 Pac. 930, 37 Pac. 231; *Marceau* v. *Travelers' Ins. Co.,* 101 Cal. 338, 35 Pac. 856, 36 Pac. 813; *Estate of Carpenter,* 94 Cal. 406, 29 Pac. 1101; *People* v. *McCarthy,* 115 Cal. 255, 46 Pac. 1073.) And while the line of demarcation in such cases between what is mere statement of an observed fact, and what is opinion evidence, is difficult to define, and while the California court has not always drawn the distinction clearly (*Holland* v. *Zollner, supra*), the competency of the opinion of the particular witness depends upon the fact whether he has an intimacy of acquaintance with the person under examination.

Since there are all degrees of intimacy, however, it is sometimes also difficult to determine what an intimate acquaintance is.   The determination of this relation must be left in every case to the trial court, its discretion in the matter not being subject to review except in cases of clear abuse of it.   This rule is declared in *People* v. *McCarthy, supra,* and we think it correct. (See, also, *People* v. *Pico,* 62 Cal. 50; *People* v. *Lane,* 101 Cal. 513, 36 Pac. 16; *People* v. *Schmitt,* 106 Cal. 48, 39 Pac. 204.)

The exact question presented here by the defendant's exception is whether the acquaintance of the reporters was such as brought them within the rule. We think the evidence clearly objectionable. While it may be assumed that these witnesses were intelligent men, that they sought the interview solely for the purpose of determining in their own minds the mental condition of the defendant, and, to this end, that they carefully studied his words and appearance, still, as a matter of law, it is apparent that they could not in the short space of a half hour, and under the particular circumstances, gain such an acquaintance with him that they could be classed among those who can be said to have been intimately acquainted with him. The admission of this evidence was clearly prejudicial, and constituted reversible error.

The witness Berryman was a saloon-keeper. He had some acquaintance with the defendant, but only such as he had gained by a limited intercourse with him as a casual customer, having particularly observed him the first time on the morning of the tragedy during a call at the saloon by the defendant while on his way to the home of the deceased. This witness was also allowed to express his opinion as to the sanity of the defendant, but without stating his reason for it. On cross-examination he was asked to state his reason for the opinion, but, upon the state's objection, was not permitted to do so. If the witness had already stated the reason for his opinion, we think no error could be predicated upon the ruling. In view of the express provision of the statute, however, this ruling was also error, even if it be conceded that the acquaintance of the witness with the defendant was so intimate that he could be allowed to state his opinion.

The defendant, in support of his defense, introduced also the testimony of several witnesses who reside in Cornwall, in the village from 'which the defendant came, tending to show that his father was insane, and had on two occasions attempted suicide. In order to rebut the inference of hereditary insanity in defendant, the state introduced the witnesses Bawden and Ball, who

came from the same place. They were permitted to say that they knew the father of the defendant, but had never heard of any attempt by him to commit suicide. Though we do not think the evidence prejudiced the defendant, it was an effort to show that the fact of the attempted suicide was not a matter of common repute in the community, and hence probably never occurred. We think the testimony was hearsay and incompetent. Insanity of a person cannot be proved by reputation. By the same rule, the contrary cannot be shown by proving the fact that such person has not the reputation of being insane.

Complaint is made that the court erred in not permitting Dr. Scanlan, one of the state's experts, to answer on cross-examination a question designed to test his knowledge of the subject of insanity. Counsel for the defendant undertook to incorporate into the question a quotation from a standard work on medical jurisprudence on the subject of moral insanity, and probably intended to ask the witness whether he agreed that the statement embodied in it was correct. Counsel says that he was pursuing a proper method in questioning the witness, and that the subject matter was pertinent. We agree with counsel that his method was correct, and that the subject matter was pertinent; but the question was not completed, because of an interruption by the county attorney, and we are unable to know with any certainty what the completed question would have been, or what answer it would have called for. We cannot, therefore, say that there was error in the ruling. Counsel should have completed his inquiry so as to make the record show what he desired to know, or made an offer of what he intended to prove by the witness.

The court, after defining and distinguishing the different grades of homicide, including manslaughter, gave an instruction defining heat of passion, and pointing out how its presence reduces what would otherwise be murder to manslaughter. Counsel for defendant, conceding the instruction to be a correct statement of the law, argues that it prejudiced the defendant because there was no evidence tending to show a case of man-

slaughter. The record shows that, if the defendant was not insane at the time of the killing, he was guilty of murder of an atrocious character. Under these circumstances, heat of passion played no part, and an instruction on the subject, however correct it may be, had no place in the charge. It was upon a matter not involved in the case. But, even so, the defendant cannot complain. It was favorable to him, rather than the contrary, because, in connection with the instruction defining manslaughter, the jury might well have concluded that they would be justified in finding a verdict of manslaughter; whereas, they should not have done so in any event. In fact, the court would have been justified in saying to the jury that they must find the defendant guilty of murder or acquit him. For there is no evidence, direct or circumstantial, tending to show any grade of homicide other than murder. (*State* v. *Calder*, 23 Mont. 504, 59 Pac. 903.)

A portion of paragraph 27 of the charge is as follows: ''A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence. You are the exclusive judges of the weight of the testimony and the credibility of witnesses. You are to determine what weight you will give to the testimony of any witness, and you will be slow to reject the testimony of any witness, and be careful; and if you can reconcile any statement and all the testimony or any of the testimony of any witness, with the facts and with the probable motives, it will be your duty to do so; but, if you should be satisfied that any witness has knowingly and willfully testified falsely in any material matter in this case, you have a right to reject the whole of the testimony of such witness, unless on any point such testimony is corroborated by the facts and circumstances of the case or other credible evidence.''

It was argued that this is not a correct statement of the law, in that it is a statement of a rule other than that authorized by

section 3390 of the Code of Civil Procedure, which declares: "The jury, subject to the control of the court in the cases specified in this Code, are the judges of the effect or value of evidence addressed to them, except when it is declared to be conclusive. They are, however, to be instructed by the court on all proper occasions:  *  *  *  (3) That a witness false in one part of his testimony is to be distrusted in others."

Obviously, a false statement is of no evidentiary value, and should not be considered for any purpose. The theory of the statute is that, when a witness is shown to be false in one part of his testimony, the jury must reject it as to this part, and assume, regarding the rest of it, an attitude of distrust, and in their discretion discard it, unless, after examination, they find it worthy of belief. The court should not, by way of exception, as in the portion of the charge quoted above, impose any restriction upon the power of the jury to reject. In *Cameron* v. *Wentworth*, 23 Mont. 70, 57 Pac. 648, this court held that the statute has no application to unintentional errors in the story of a witness, nor to evidence given upon immaterial matters without intention to deceive; and hence, as a precaution against a misunderstanding by the jury when submitted in an instruction, it should always be given with the words "willfully" and "material," expressed as qualifications of the rule it declares. This is undoubtedly a correct interpretation of it, and is at the same time a demonstration that the statement in the same opinion— "it is undoubtedly the rule that, where a witness has willfully sworn falsely as to any material matter upon the trial, the jury is at liberty to discard his entire testimony, except in so far as it has been corroborated by other credible evidence"—is technically wrong, because it recognizes an unauthorized restriction upon the discretionary power of the jury to reject. (*State* v. *Lee*, 34 Mont. 584, 87 Pac. 978.) Under any statement of the rule sought to be embodied in the instruction, the exception should extend only to the portion of the testimony corroborated, and should not include the whole of the testimony of the discredited witness, if found to be corroborated on any point. An

instruction embodying the rule in any form is of doubtful propriety, as is clearly pointed out by Mr. Wigmore (2 Wigmore. on Evidence, sec. 1010), and, in view of the provision of the statute, we do not think it should be given in any case. The statute declares the rule, and should be followed whenever the condition of the case requires the giving of an instruction on the subject.

While all this is true, we do not think prejudicial error can be predicated upon the instruction, because here, and in other portions of the charge, the court repeatedly told the jury that they were the exclusive judges of the weight to be given to the evidence, and, doubtless, they clearly understood this to be so, notwithstanding the unauthorized restriction contained in the latter part of the instruction. On another trial, the instruction should be omitted. In so far as the case of *State* v. *De Wolfe,* 29 Mont. 415, 74 Pac. 1084, lays down a different rule from that here announced, it must be considered overruled.

The court, in paragraph 32 of its charge, told the jury that the good character of the defendant, if they found the same from the evidence, might be considered by them as a fact or circumstance tending, like any other fact or circumstance, to establish his innocence. This was doubtless misleading and prejudicial, because there was no evidence introduced on the subject, and the jury may have understood that, since such was the case, they should find against the defendant on this point.

Many errors are urged upon the giving of other instructions and upon the refusal to give instructions requested. With the exceptions noted, we think the charge as given was correct, and that it sufficiently stated the law applicable to the case.

For the reasons stated, the judgment and order are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.