### John Mallory v. The State.

*No. 1015.     Decided June 17th, 1896.*

**1. Evidence—Arrest and Identity of Defendant From Description.**

It is not competent to prove by the officer who arrested defendant, that he obtained from others a description of the party who had committed the crime, and, that it was upon the description given him by said parties that he afterwards arrested defendant. Such testimony is hearsay and is calculated to injure the rights of the defendant and strengthen the State's testimony as to his identity and is moreover tantamount to a statement that the State's witnesses were correct in their identity of the accused.

**2. Passing Forged Instrument—Evidence of Contemporaneous Crimes.**

On a trial for passing a forged instrument, it is competent for the State to prove that the accused passed other forged instruments to the same or to other parties at another time and place.

**3. Same—Evidence by Comparison of Handwriting.**

On a trial for passing a forged instrument, where three witnesses had testified, that they saw defendant write the name endorsed upon the several checks, and defendant relied upon an alibi and had testified that he did not write the name endorsed upon the instruments. Held: That as evidence admissible in support of his testimony, it was competent for defendant to put in evidence a letter, which he had previously written to his sister, in order that the jury might make a comparison of the handwriting of the letter with the endorsements upon the checks; and, it was competent for the defendant to show, that he had written said letter before the accusation for which he was on trial had been brought against him, and that the same had been returned to him for use at the trial in comparison of handwritings.

**4. Same—Extraneous Crimes—Charge Limiting and Restricting.**

Evidence of extraneous crimes, when admitted as tending to establish the fraudulent intent in the transaction under investigation, should always be circumscribed, limited and restricted by the charge of the court to the only object and purpose for which it was admitted.

Appeal from the Criminal District Court of Dallas. Tried below before Hon. Charles F. Clint.

Appeal from a conviction for passing a forged instrument; penalty, two years' imprisonment in the penitentiary.

The following summary of the evidence, taken from appellant's brief, is substantially correct, viz: On Saturday night, November 30, 1895, between the hours of 6 and 8 o'clock, there was passed upon each of three merchants, whose places of business are about five blocks apart on Elm street, in the city of Dallas, a forged check, signed by Daniel F. Sullivan, on the American National Bank, and each payable to the order of Michael Gorman in the sum of twelve dollars. The merchants, Eisenlohr, Wisdom and Stamm, testify that appellant was the man that passed the forged checks; while Yost (the clerk of

Stamm) is not positive that appellant is the man. Eisenlohr and Wisdom, who, are druggists, say that he bought from each of them a bottle of Hood's Sarsaparilla and a box of Hood's Pills, each purchase amounting to $1.25 and that they each gave him back $10.75 in money. Stamm says that appellant purchased from him $1.25 worth of underwear, and got back from him $10.75 in money. Each of the merchants testify that the appellant endorsed the checks by writing on them the name of Michael Gorman. The four State's witnesses say that at the time the utterer had the appearance of being a common laborer, carrying his lunch bucket, and as appearing fresh from labor, with grease and dirt upon his hands and face, and soiled apparel, and each saw him for the first time that night. Wisdom saw him the following Tuesday at his store and identified him as the man; while Eisenlohr and Stamm saw him that day at the city hall and identified him as the man who passed the checks, etc. Charley Durham said that he got from the merchants a description of the man, and after a talk with Dan Sallivan, he arrested appellant and took him to Wisdom's store.

His employer, George Mummert, and his fellow employes, Tuggles and Fowles, saw appellant that Saturday afternoon at 5 o'clock at Mummert's place of business on Main street, and testified that owing to slack business he was laid off on Saturday evening, the 23rd, but was to resume work Monday morning, December 2nd. That his person and clothing were clean, and that his suit was new. They also say that he was industrious and honest.

Mr. and Mrs. Tarleton, Mrs. Huckaby and Mrs. Lillie Boyle, who knew the appellant well, and with the first two he was boarding, etc., say that appellant arrived at the house between 5 and 5:30 o'clock that Saturday afternoon, which was at No. 574 South Akard, and about one and one-half miles from the business houses of the three merchants, and that he remained on the place, being with and about them all of the time until he retired, about 8 o'clock, to his room upstairs. Frank Phelps, his sick room-mate, says that appellant came to his room at 8 o clock and remained there all night, and did not bring with him any Hood's Sarsaparilla, or pills or underwear.

Appellant's testimony is full and clear and is corroborated by the five persons at the boarding house and three at Mummert's. He denies being the man that passed or had the remotest ¦connection with the checks, or acquaintance with any of the merchants or their places of business, or of having ever heard of, or that there was such a man as Michael Gorman, and further says that, not only was he at home that Saturday night (leaving town at 5 p. m.), but that the only night he was ever down town was Saturday night, 23rd, the week previous. His defense is an alibi, full and complete, to the charge.

*Stillwell H. Russell,* for appellant.

*Mann Trice,* Assistant Attorney-General for the State.

[No brief found with the record.—Reporter.]

DAVIDSON, JUDGE.—Appellant was convicted of passing a forged instrument, and prosecutes this appeal. This is a companion case to cause No. 1016, Mallory v. State (just decided), 36 S. W. Rep., 750. The record in this case is before us in quite a different shape from that in the former case. The witness, Durham, while testifying for the State, over the objection of the appellant, was permitted to state that he obtained from E. A. Yost, J. R. Wisdom, R. F. Eisenlohr, and M. Stamm a description of the man who had passed upon them certain checks on the night of November 30, 1895, being the checks admitted in evidence in this case, and that, after he got a description from the parties named, he arrested the defendant, and that it was upon the description given him by said parties that he afterwards arrested defendant. The defendant was not present when the conversations occurred between said parties and the witness, Durham. It was objected that this testimony was hearsay, and calculated also to injure the rights of the defendant before the jury, and served to strengthen the State's testimony as to the identity of the defendant, as the party who passed or uttered the forged checks upon said parties. We think these objections are well taken. These parties who gave a description to Durham were witnesses in the case, and testified. Their testimony as to the description and identity of the defendant was not attacked by showing that they had made contradictory statements in regard to this matter, and it was not permissible to corroborate them as to their description of the defendant, by the evidence of the witness, Durham, to the effect that they had given him a description of a party that led him to believe that defendant was the guilty party, and caused him to make the arrest. It is not necessary here to state how far an officer will be permitted to go in testifying in regard to his actions in making the arrest of a party suspected of crime, or to detail information he may have received that led him to make an arrest, or to perform any given act looking towards the arrest of a party or ferreting out crime. Suffice it to say that the testimony here detailed by the witness, Durham, was unauthorized upon that ground, for it was tantamount to a statement that these witnesses were correct in their identity of the accused. as the party who passed the checks. The evidence as given was clearly hearsay, and inadmissible. The State was permitted to introduce in evidence two checks passed upon Wisdom, Yost, and Stamm, with the endorsement of the name of "Michael Gorman" placed thereon. This was objected to, because immaterial, irrelevant, and calculated to prejudice the defendant's rights in the premises. We think this testimony was admissible. See, Hennessy v. State, 23 Tex. Crim. App., 340; Burks v. State, 24 Tex. Crim. App., 326; Id., 24 Tex. Crim. App., 332. The State was also permitted to prove by Yost, Eisenlohr, Stamm, and Wisdom that they saw the defendant endorse the name "Michael Gorman" on the various checks introduced in evidence. They testified that this was the first time they

had ever seen the defendant. The defendant relied upon an alibi. In this connection the defendant himself testified, and denied writing the name "Michael Gorman" on the check, denied being present or having any connection whatever with the passing of the instrument, and, after identifying a letter he had written to his sister some six or eight months prior to the alleged passing of these instruments, he proposed to introduce that letter in evidence before the jury for the purpose of comparing the handwriting of the party who wrote the name "Michael Gorman" on the checks. In other words, he proposed, as one of the means of disproving his presence at the time and place of the passing of the checks, to show by this letter that his genuine handwriting was not the same as that of the endorsement on the check. We are of opinion that the letter, under all of the circumstances, was sufficiently identified as the handwriting of the defendant to authorize its introduction as a means of comparison between the handwriting on the check and that contained in the letter. The court seems to have excluded this letter, because it was not authenticated by any other testimony than that of the defendant himself. This did not go to the relevancy of the testimony, but to its weight before the jury. While the court may have believed the defendant was testifying falsely in regard to writing the letter, yet the jury may have thought differently; and he was entitled to whatever weight might be attached to it in comparing the handwriting of the letter with the endorsement on the check. The envelope in connection with this letter, which was produced by the defendant, bore the postmark, "Waco, May 9, 1895." The letter was addressed to the defendant's sister in Memphis, Tenn., and the postmark on the back of the envelope showed that it was received at Memphis on the night of the following day. Presumably for the purposes of this trial, the defendant had procured said envelope and letter to be sent to him from Memphis. Now, if the defendant's sister, to whom the letter was addressed, had been present, and had been placed upon the stand, which would have been permitted, she could have testified as to the receipt of the letter from her brother, and identified the same. It then would have been before the jury for their inspection and comparison in connection with the alleged indorsement by the defendant on the draft he was charged with uttering. In our opinion, equally the defendant would be permitted to show that he had written said letter to his sister before this accusation was brought against him, and that the same had been returned to him by mail, and identify the same before the jury for their comparison and inspection with the alleged endorsement on the check. The charge of the court given in this case on the subject of other checks which were introduced in evidence is objected to by appellant. Without criticising said charge, we would suggest that, upon said testimony, the learned judge frame a charge in accordance with the decisions of this court on the subject of such extraneous testimony. See, Burks v. State, 24 Tex. Crim. App., 326; Id., 24 Tex. Crim. App., 332; Hennessy v. State, 23 Tex. Crim. App., 340. Thornley v. State, 36 Tex.

Crim. Rep., 118. For the admission of Durham's testimony, and for the rejection of the letter offered in evidence by the defendant, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*

HURT, Presiding Judge, absent.