THE STATE v. SYLVESTER BALDWIN, Appellant.—297 S. W. 10.

Court en Banc, June 27, 1927.

1. **JUDGMENT: Set Aside During Term: Sua Sponte.** The court rendering a judgment of affirmance should, of its own motion, set it aside during the judgment term, if the majority of the judges thereof become convinced that, in the interest of justice and right, such judgment should be set aside and a rehearing granted; and an order setting aside a judgment at the term at which rendered is within the power and jurisdiction of the court, with or without a motion.

2. **SUBSTANTIAL EVIDENCE: Matters for Consideration.** The prosecuting witness having testified that defendant was one of two persons who robbed him, and a verdict of guilty having been returned, the result of defendant's appeal is dependent upon alleged procedural errors.

3. **ASSIGNMENTS OF ERROR: General in Criminal Case: Prior to 1925.** A general assignment of errors in the motion for a new trial in a criminal case tried prior to the time the Act of 1925 became effective, is sufficient to authorize a review of such assignments on appeal.

4. **OBJECTIONS: General and Specific.** In a criminal case tried prior to the Act of 1925, if the objection to evidence was general, that is, if it was objected to as merely "irrelevant, incompetent and immaterial," or words to that effect, the objection was not sufficient if the evidence, when offered, was relevant or competent for any purpose. But on the other hand, if, when offered, the evidence was not relevant or material for any purpose, under the issues made and the conditions existing at the time, then such general objection was good, and if exception was saved to the court's ruling, a general assignment in the motion for a new trial saves the point for review in this court.

5. **EVIDENCE: Identification of Photograph: Corroborative of Unimpeached Witness.** The sworn testimony of an unimpeached witness cannot be fortified by his unsworn statements made out of court in the absence of defendant. The prosecuting witness having testified that he was robbed by defendant and having in his testimony identified defendant as the robber, and being unimpeached in any manner, it was error to permit him, as corroborative of his identification, on his direct examination by the State, to testify that, two days after the robbery, he identified

a photograph at the police station as that of defendant; and such testimony not being relevant to any issue in the case, a general objection to its admission as "irrelevant and immaterial" was a sufficient objection. Testimony of the man robbed that two days after the robbery, in the absence of defendant, he recognized among many photographs the photograph. shown him at the trial as the photograph of defendant, is not original evidence or identification, but mere hearsay, and irrelevant and incompetent.

6. EVIDENCE: Original: Extrajudicial Identification: Corroborative of Unimpeached Witness. What a witness has said out of court cannot be used to fortify his testimony. There being no attempt to impeach the witness, an extrajudicial identification of defendant is not admissible as original evidence; and if the identification is made by photographs in the absence of defendant, the admission of testimony of the witness identifying the photographs, as original evidence, is not only irrelevant, but highly prejudicial.

7. ———: Photograph: Place Where Kept: Bertillon Room: General Objection. It is wholly irrelevant to any issue in the case where a photograph of defendant was kept, and since the statute (Sec. 4140, R. S. 1919) provides that a person "convicted of a felony" shall be subject, by way of identification, to all the things allowed by the Bertillon system, it is prejudicial error to permit the witness to testify that the photograph of a defendant on trial was "kept in the Bertillon Room" unless he has been convicted of a felony; and an objection that the evidence was "irrelevant and immaterial" should be sustained, and is sufficient to authorize a consideration of the error on appeal.

8. ARGUMENT TO JURY: Robbery: Alibi: Usual Defense. Alibi is a legitimate defense, and one recognized by the law, but it is not unfair, in his argument to the jury in a robbery case, for the attorney for the State to remind the jury that an alibi is the usual defense in such cases.

9. ———: ———: Assault upon Witnesses: Hang Together. In the trial of a defendant for robbery the counsel for the State steps beyond reasonable bounds in his argument to the jury when he makes an assault upon defendant's five witnesses called to prove his defense of alibi, by telling the jury that such witnesses "must hang together or we will hang them separately," there being nothing in the record to justify an assault upon any of the witnesses.

10. FAIR TRIAL. Whether defendant be guilty or innocent, he is entitled to a fair trial; and where it appears, from the prejudicial evidence improperly admitted, the prosecuting attorney's unfair conduct of the trial and his unfair argument to the jury, that defendant has not had the fair and impartial trial contemplated by the law, the judgment of conviction will, upon his appeal, be reversed.

Corpus Juris-Cyc. References: **Criminal Law,** 16 C. J., Section 1050, p. 548, n. 51; Section 1135, p. 589, n. 10; Section 1272, p. 641, n. 22; Section 2198, p. 876, n. 20; Section 2242, p. 897, n. 93; Section 2246, p. 900, n. 15; Section 2615, p. 1117, n. 95; 17 C. J., Section 3350, p. 89, n. 63; Section 3662, p. 319, n. 22; Section 3770, p. 375, n. 66. **Witnesses,** 40 Cyc., p. 2555, n. 42; p. 2556, n. 47, 51.

Appeal from Circuit Court of City of St. Louis.—*Hon. Victor H. Falkenhainer,* Judge.

REVERSED AND REMANDED.

*P. H. Cullen, Jones H. Parker* and *Owen G. Jackson* for appellant; *Bass & Bass,* of counsel.

(1.) Prior consistent statements or acts of a witness who has not been impeached are not admissible in evidence for the purpose either of corroborating his testimony or of increasing his credibility. Orris v. Railroad Co., 279 Mo. 1; Humphreys v. Railway Co., 286 S. W. 743; Riney v. Vanlandingham, 9 Mo. 816; State v. Levy, 90 Mo. App. 643; State v. Hendricks, 172 Mo. 654; State v. Brown, 247 Mo. 715; Russell v. Covelero, 246 Pac. 25; Hardin v. Ry. Co., 108 S. W. 490.    (2)    An "extrajudicial identification," as it is called, of a person accused of crime, is never competent as original evidence in the subsequent trial; neither is it competent to corrobarate an identifying witness in a criminal trial by proof of a former identification where no attempt has been made to impeach such witness in any way. People v. Jung Hing, 212 N. Y. 393; State v. Houghton, 43 Ore. 125, 71 Pac. 982; State v. Evans, 98 Ore. 214, 192 Pac. 1062; Warren v. State, 103 Ark. 165, 146 S. W. 477; People v. Lukoszus, 242 Ill. 101, 89 N. E. 749; People v. Seppi, 221 N. Y. 62; Cummings v. State, 87 Tex. Cr. 154, 219 S. W. 1104; Gillotti v. State, 125 Wis. 634, 116 N. W. 252; State v. Hamilton 176 N. W. 773; Reddick v. State, 35 Tex. Crim. 463, 60 Am. St. 56, 34 S. W. 274; Clark v. State, 39 Tex. Crim. 152, 45 S. W. 696; Moore v. State, 40 Tex. Crim. 439, 50 S. W. 942; Murphy v. State, 41 Tex. Crim. 120, 51 S. W. 940; Turman v. State, 50 Tex. Crim. 7, 95 S. W. 533; People v. Allison, 249 Pac. 881; People v. Purtell, 153 N. E. 72; Venn v. State, 182 S. W. (Tex.) 318.    (3)    As to when evidence of the extrajudicial identification of a defendant as the wrongdoer is excluded, and when an identifying witness cannot be corroborated by evidence of a former accurate description of the defendant by him, see: People v. Mayne, 118 Cal. 517, 50 Pac. 654; People v. Jung Hing, 212 N. Y. 393, Ann. Cas. 1915-D 333 and note; Notes: 41 L. R. A. (N. S.) 949; Rogers v. State, 115 S. W. 156, 41 L. R. A. (N. S.) 857, and note; Note: Ann. Cas. 1915-D 341; People v. Johnson, 91 Cal. 265, 27 Pac. 663; People v. McNamara, 94 Cal. 509, 29 Pac. 953; People v. Lu Koszus, 242 Ill. 101, 89 N. E. 749; Com. v. James, 99 Mass. 438; Com. v. Fagan, 108 Mass. 471; Mallory v. State, 37 Tex. Crim. 482, 36 S. W. 751, 66 Am. St. 808.    (4)    Evidence that the photograph was kept in the Bertillon room was not admissible for any purpose, and hence a general objection was sufficient. State v. Barker, 249 S. W. 74; State v. Condit, 307 Mo. 393.

*North T. Gentry*, Attorney-General, and *L. Cunningham*, Assistant Attorney-General, for respondent.

(1) The evidence is sufficient to justify and sustain the conviction. It is positive and convincing. State v. McCullough, 289 S. W. 811;

State v. Hahn, 289 S. W. 845; State v. Holmes, 289 S. W. 904; State v. King, 214 Mo. 389; State v. James, 216 Mo. 394; State v. Strada, 274 S. W. 34. (2) The objections of defendant to the admission of evidence and the rulings of the trial court are fully set out herein under bill of exceptions. A careful study of the same will show conclusively that the trial court committed no serious error. In order for the appellant to complain of the rulings of the court on the admission of evidence, his objections must be timely and specifically state the reasons therefor, and this court should not convict the trial court of error, even though the evidence should not have been admitted, if proper timely objection was not made. State v. Tipton, 271 S. W. 58; State v. Strait, 279 S. W. 113. (3) The photograph of the defendant was admitted in evidence solely on the question of identity. There is no evidence that it was a Bertillon photograph taken under the statute for the identification of convicted criminals. The evidence only went to the extent of disclosing that it was a photograph which had been kept in the Bertillon room at police headquarters. In any event it was properly admitted. (4) A photograph of the accused is admissible on the question of his identity. Commonwealth v. Morgan, 159 Mass. 375; Commonwealth v. Johnson, 199 Mass. 55; State v. Fulkerson, 97 Mo. App. 605. A photograph shown to be a correct representation of the person whose identity is in question is admissible for the purpose of identifying him. State v. Jones, 139 Pac. 441, 48 Mont. 505, 520; State v. Smith, 121 N. Y. 578; Moon v. State, 198 Pac. 292; Commonwealth v. Tucker, 189 Mass. 457; People v. Carey, 125 Mich. 535, 84 N. W. 1087; People v. Scarcey, 121 Cal. 1, 53 Pac. 359; Johnson v. State, 59 N. J. L. 535, 38 L. R. A. 373; 2 Wharton's Crim. Ev. (10 Ed.) 1006, 1126-1132; 1 Wharton's Law of Ev. (3 Ed.) 676; McClain on Criminal Law, sec. 406; Underhill on Criminal Law, sec. 50; 1 Wigmore on Evidence, 660; State v. Hasty, 121 Iowa, 507, 96 N. W. 1115; State v. Keller, 191 Pa. 122; Commonwealth v. Campbell, 155 Mass. 537; Underhill on Criminal Ev. (3 Ed.) 1132-1141. Testimony as to identification of photograph was proper. Baustian v. Young, 152 Mo. 317; Smart v. Kansas City, 91 Mo. App. 586. (5) The rulings of the trial court were right, but in any event no proper objection was made on which the court could be convicted of error. If the photograph admitted in evidence was competent for any purpose whatever, the objection as made by defendant and on which the trial court ruled was wholly insufficient to raise any question for review. The motion for new trial was too general to direct the court's attention to the testimony complained of or to the photograph. Masked batteries should be barred in the warfare for truth and justice. The purpose of a motion for new trial, even under the old statute, was to point out the errors complained of and state the

reasons entitling the party to a new trial.  It was never intended that
the trial court should be convicted of error on a general allegation
of error.  The motion *must set forth the grounds or cases therefor.*
Sec. 4079, R. S. 1919; State v. Knight, 278 S. W. 1039; State v.
Gurnee, 274 S. W. 60; State v. Saale, 274 S. W. 396; Heinbach v.
Heinbach, 274 Mo. 301; State v. Burrell, 298 Mo. 679; State v. Park-
er, 256 S. W. 1040; State v. Lassieur, 242 S. W. 900; State v. Del-
cour, 297 Mo. 321; State v. Tipton, 271 S. W. 58.  (6)  An argument
which is a legitimate comment on the evidence or the nature of the
defense, or the inferences to be drawn therefrom in the light of
history or the common experience of men, is not improper.  It was
not error to refer to the prevalence of crime or to conditions sur-
rounding the case.  The remarks complained of would not warrant
the directing of a new trial.  State v. Peak, 292 Mo. 264, 237 S. W.
466; State v. Gallagher, 222 S. W. 468; State v. White, 299 Mo.
610; State v. Lloyd, 263 S. W. 214; State v. Affronti, 238 S. W.
106; State v. Midkiff, 278 S. W. 683; State v. Murrell, 289 S. W. 859.

GRAVES, J.—A glance at the sundry opinions filed in Divi-
sion Two shows that this case has had a checkered career.  See State
v. Baldwin (3 opinions, not including the one upon which it came
to Court en Banc), 281 S. W. 940 to 945.  However, most of these
matters, so earnestly pressed in Division Two, are as "water passed
over the mill," and of no interest to this court.  Historically it
might be said, that defendant, charged with the crime of robbery
in first degree, was convicted in the Circuit Court of the City of
St. Louis, and upon appeal here, by the first opinion filed, his judg-
ment of conviction was affirmed.  Later the Division (by a majority
vote of the judges) set aside the judgment of affirmance, of its own
motion, and set the cause for another hearing.  This was done at
the judgment term, and was therefore an act within the power of the
court to do. Not only within its power and jurisdiction, but it was
a duty that should have been performed, if such majority became
convinced that such judgment should be set aside in the interest of
justice and right.  In a civil case, in which there was neither excite-
ment nor notoriety, we had the privilege of deliberately and coolly
considering the very question involved in Division.  In that case
there was no motion for new trial timely filed, and what was filed
was a paper by a party not of record in the case.  We ruled that
the court had the right to seek information from any source in the
interest of the sanctity and right of its judgment.  [See Ewart
v. Penniston, 233 Mo. l. c. 709 and 712.]  The foregoing is only
by way of passing, because it has nothing to do with the issues
pending here.

The instant cause was reargued, and a new opinion in Division was written (by the writer of the first opinion) and there being a dissent to this opinion (which again affirmed the judgment of the lower court), upon motion, and in due course, the cause reached this court. There is the evidence of the prosecuting witness that defendant was one of two parties who robbed him, so that the result of this appeal is dependent upon alleged procedural error. These, and the further detail of the facts, will be left to the opinion.

I. Although there is much in some of the opinions cited with reference to general assignments of error in a motion for new trial, we do not understand the learned Attorney-General as pressing that matter in this case. Some language, even in some recent opinions, cannot be fully endorsed, in view of the ruling in State

**General Assignments.** v. Nolan, 111 Mo. l. c. 492, wherein Judge GANTT so well settles the question. He even answers in advance the great anxiety suffered by some members of this court, as to the use of "masked batteries" fired "from ambush," upon the poor trial judges. We think, with Judge GANTT, that these officials know what has been done through the trial, and are not taken unawares by counsel filing a motion for re-hearing with only general assignments. We have noticed further that the judges of this court, who have been trial judges, have not written (tears in eyes) as to "masked batteries" or unfair treatment. This has remained for others. We cite the Nolan case, supra, because it is a criminal case, and has reference to our criminal code provisions relating to motions for new trial, and *further, because it has met with the approval of Court en Banc,* and thus what is said in Nolan's case has been said by Court en Banc. [State v. Barrington (Court en Banc), 198 Mo. l. c. 76-77; Collier v. Lead Company (Court en Banc), 208 Mo. l. c. 257; Wampler v. Railroad (Court en Banc), 269 Mo. l. c. 464.]

In this latter case we cite with approval not only the Nolan case, but also the Barrington case, and thus the court en banc has approved what is said in each of these two criminal cases. But it has been intimated that Wampler's case did not (upon the question of general assignments in the motion for new trial) have the approval of a majority of the court. As a fact, upon this question it had the approval of six of the seven judges. [Kilpatrick v. Robert, 278 Mo. l. c. 264.] In the Kilpatrick case, supra, 278 Mo. at page 264, we said: "Under our ruling in Wampler v. Railroad, 269 Mo. l. c. 476, et seq., this motion is sufficient, under our practice, in all of its several assignments. The case law is fully reviewed in the Wampler case by our Court en Banc, and upon the questions here involved, six judges concur. BOND and REVELLE, JJ., concur in separate opinion, but *upon the sufficiency of the motion* (one *in general terms*) in the

Wampler case, they agree. As the Wampler opinion cites and reviews all, or at least many, of our cases upon the subject, further citation is not required here.''

This case was in Division One, and the opinion was approved by all four judges. BOND, J., concurred, and thus verified what I wrote then, and have written now as to Wampler's case. The other idea arises from an error in the number of a paragraph as stated in the opinion of Judge BOND. The question is discussed by the present writer in his paragraph 3 of the majority opinion in Wampler's case. In the latter part of this paragraph 3, we discuss and approve the rulings in the Nolan, Barrington, and Collier cases, supra, as well as the ruling of LAMM, J. (to like effect) in Stid v. Railroad, 236 Mo. l. c. 397. In this paragraph 3, and in paragraph 4 of that opinion, WOODSON, FARIS, and BLAIR, JJ., concurred. Judge BOND concurred in a separate opinion, and in this Judge REVELLE concurred. Judge BOND, among other things, said:

''In judging the sufficiency of motions for new trial by the rule fixed by that statute, full effect should be given to it as it has been interpreted and construed in the unbroken line of precedents cited in the concluding portion of the second paragraph of the learned majority opinion. These have held, and such has been the consensus of opinion at the bar, that the 'specification of reasons' in the motion for new trial in the present case was sufficient to bring up for review the action of the court in its refusal of the instructions requested by respondent for a peremptory verdict or other instructions requested by it, and, also, in the giving of instructions at the request of plaintiff. Defendant excepted at the time in both instances to the action of the court, and the reference shown in its motion for new trial to the adverse rulings of the court in respect of such instructions, was a sufficient compliance, under the decisions of this court, with the terms of the statute requiring 'a written specification of reasons.' Hence I concur only in the result reached in the learned majority opinion. REVELLE, J., concurs in this opinion.''

Judge BOND uses the words, ''unbroken line of precedents cited in the concluding portion of the *second paragraph* of the learned majority opinion.'' It is clear that Judges BOND and REVELLE had reference to the cases cited in the concluding portion of our paragraph 3, of the Wampler opinion, and not paragraph 2. It is clear that these two judges were concurring in the doctrine of the Nolan, Barrington, Collier and Stid cases, supra. We so said in the Kilpatrick case, supra, and Judge BOND agreed. Not only so but in State ex rel. v. Ellison, 282 Mo. l. c. 662, this court (en Banc) again said that what was ruled in Wampler's case was not longer an open question, but one fully and finally determined. And may we add that even our learned brother who dissented in Wampler's case

(269 Mo. 1. c. 486), in a later dissent, in the case of State ex rel. v. Reynolds, 213 S. W. 1. c. 784, says what we called a general assignment in the Wampler motion, was in fact a *specific* and good assignment. Note the language: "Furthermore, it was not necessary to a determination of the matter acutely at issue in the motion for a new trial in the majority opinion in the Wampler case that it be there held that a general assignment of error in such motion concerning the instruction will suffice to authorize a review of same. This for the reason that the motion in that case was sufficiently specific to conform to the requirements of Section 1841, which was not the fact in the case at bar; and hence the general observations of the learned writer of that opinion may not unfairly be classified as *obiter* so far as they conclude that said section is not controlling." We were pleased to see him change his views.

There is no question as to what the Court en Banc has ruled in both civil and criminal cases. And as said, we do not understand the learned Attorney-General to gainsay the rule. As we gather it, what he urges is that there were no sufficient objections and exceptions made and taken during the trial to make a general assignment in the motion for new trial good. Nor does he contend that the Act of 1925, Laws 1925, page 198, applies to this case. The trial was prior to 1925, and the law would not apply. So the now recent cases, wherein this Act of 1925 is discussed, have no bearing upon the instant case.

The contention as to the objections and exceptions to testimony we take later.

II. We start our investigation of the sufficiency of objections and exceptions during the course of the trial with the rules of the Nolan and Barrington cases fully in mind. In the Barrington case (198 Mo. 1. c. 76) it is said: "Upon this proposition we will say that, if the objections at the trial were sufficiently specific to notify the trial court at the time of the nature and character of the objections and the reasons for them, the general assignment in the motion for new trial, that the court improperly admitted illegal, incompetent and irrelevant testimony, would properly preserve the point of improper cross-examination for review in this court." The Nolan case is cited as approving this rule, and it does announce such a rule.

*Objections: General and Specific.*

We must note further that, if the objection to the evidence is general, i. e. objected to as merely "irrelevant, incompetent and immaterial," or words to that effect, then the objection is not good if the evidence was, *when offered,* relevant, or competent, for any purpose. See cases, infra. We use the words "when offered" supra, purposely and advisedly, because this point is ruled in Ex parte

Dick & Bros. Brewery Co. v. Ellison (en Banc), 287 Mo. l. c. 154 and 155, whereat it is said: "It is suggested that it was not to be expected that in the opening of the trial the trial court could have known that the testimony objected to might not prove competent in some way in later stages of the proceeding. If this be an adequate answer, then any incompetent evidence, provided it be wholly incompetent, can be admitted without error, since such evidence is open to hardly any other than a general objection, and no general objection would be good in the beginning of a trial under the rule contended for."

But on the other hand, if, *when offered,* the evidence is not relevant or material for any purpose, under the issues made, and the conditions existing *at the time,* then such general objection is good, and if exception was saved to the court's ruling, then a general assignment in the motion for new trial saves the point for review in this court. [Bailey v. Kansas City, 189 Mo. l. c. 512: State ex rel. v. Diemer, 255 Mo. l. c. 350; Stoner v. Royar, 200 Mo. l. c. 454.]

The foregoing are from Division One of the court, the first two by Judge LAMM, and the last one by Judge VALLIANT. In the Bailey case, Judge LAMM said: "If the evidence objected to is not competent *for any purpose* in the case, a specific objection has no office, and the general objection of irrelevancy, immateriality, etc., will do." In the Stoner case, Judge VALLIANT said: *"An objection to evidence that it is irrelevant is sufficiently specific; it means that it does not bear on any issue in the case, and immaterial means nearly the same."* In Diemer's case, it is ruled that the general objection of irrelevancy is good, if the tendered evidence tends to prove no issue in the case. The rule announced by LAMM, J., in Bailey's case, supra, is quoted and approved in Ex parte Dick & Bros. Brewing Co. v. Ellison (en Banc), 287 Mo. l. c. 154, with the concurrence of all judges, except ELDER, J., not sitting. The same opinion cites the Diemer case along with the Bailey case. The Stoner case is not mentioned, but the rule it announces is identical with that stated in Bailey's case, supra. So this rule has the approval of this very late expression of Court en Banc.

In State v. Barker, 249 S. W. l. c. 77, WHITE, J., for Division Two says: "Besides, the objection that the evidence sought to be elicited was irrelevant and immaterial, we think, is sufficiently specific in this case. It has been held that, where evidence offered is on its face so foreign to the issue on trial that it could have no connection with or relation to the offense charged, an objection for irrelevancy is sufficient. [State ex rel. v. Diemer, 255 Mo. 350, 164 S. W. 517.] In that case Judge LAMM reviews the authorities on this subject at length, and refers as authority for the position to older cases. [Stoner

v. Royar, 200 Mo. 454, 98 S. W. 601; Bailey v. Kansas City, 189 Mo. 1. c. 512, 87 S. W. 1182.]

"In the case last cited this court said: 'If the evidence objected to is not competent for any purpose in the case, a specific objection has no office, and the general objection of irrelevancy, immateriality, etc., will do.'

"The Diemer case has been cited with approval in several later cases. [Ex parte Dick & Bros. Brewery Co. v. Ellison, 287 Mo. 1. c. 154, 229 S. W. 1059; State v. Lewis, 264 Mo. 1. c. 430, 175 S. W. 60; Hafner Mfg. Co. v. St. Louis, 262 Mo. 634, 172 S. W. 28.]

"In some of the cases cited it was pointed out that the objection to evidence as incompetent is no objection at all, but an objection that evidence is irrelevant is as specific as an objection could be where the evidence objected to has no relation to the case. Evidence might be relevant, pertinent, and affect the issues, and yet be incompetent for various reasons. But, if it is entirely foreign to the issues, it is irrelevant and objection for that reason is sufficient."

So this Division of the court, by unanimous opinion, recognized the ruling in the Ellison case by Court en Banc, and therefore the rule as announced, and properly announced in the Bailey case. As said, we have confined our citations to cases from Court en Banc, or divisional opinions approved by Court en Banc.

In announcing the foregoing rule we have cited largely opinions from the Court en Banc, and only opinions which go to the direct point. This, because our opinions (from either Division) have not always spoken with one tongue. In most instances, however, the facts of the case were seemingly overlooked. With the rules, supra, before us, we now take up the facts of the instant case. Before doing this (in the succeeding paragraph) we repeat again, that there was substantial evidence upon which the case became one for the jury. The defendant's demurrer to the evidence requires no further attention.

III. In getting at the question of the sufficiency of an objection, the time of the objection and circumstances of the case at that time are material, as we have seen, supra, in the Ellison **Statements** case, 287 Mo. 154.
**out of**
**Court.**     Roy Smith, prosecuting witness, claims to have been robbed of $31 by two men armed with revolvers. As a witness he testified that he was so robbed at about seven o'clock on the evening of January 3, 1923. On the witness stand, he identified the defendant as one of the men, and said that he was able to do so by reason of a scar upon his face. He says that he reported the robbery by a personal visit to Deer Creek Police Station. Two days later (January 5th) he testified that he went to Central Dis-

trict Police Station, where he was shown a great number of pictures. This witness also gave evidence of the venue. He had not been attacked in any way up to the time that the following occurred:

"Q. And what was the condition of the lights there? A. Why, there was a lamp post right there at the alley and he held me up practically right in the light of the lamp post.

"Q. Well, could you see his features? A. Yes, sir; I looked over the left shoulder and Baldwin was on the left-hand side and I looked over my left shoulder and I looked in his face and then his companion started to hit me in the side with his gun and told me to turn my head around, and if I didn't turn my head around he would shoot me and kill me.

"Q. Now, then, how do you know that this was Baldwin? A. Why, by a scar on the left hand side of his face.

"Q. Is that the man? A. Right there, yes, sir.

"Q. Now, then, after they had taken your money, state to the jury what was done by you and by the other parties? A. Well, after they taken my money away from me, they told me to get back in my machine and drive on.

"Q. What did you do? A. I got in; I cranked my machine and got in it, and then they took their machine away so I could go ahead and I drove on away.

"Q. Now, then where did you go? A. Why; I looked for an officer and couldn't find any and then *I went down to Dayton Street—* or, rather, *Deer Street Police Station and told them out there I was held up.*

"Q. Well, never mind what you told them. You went to the Deer Street Police Station and reported it? A. Yes, sir.

"Q. Now, did you go to any other police station after that? A. *I went down to the Central District Police Station to—*

"Q. Now, what time did you go to the Central District Police Station? A. *On the 5th of January.*

"Q. And what did you do—not what was said or what you said, *but what did you do when you arrived at the Central District Police Station? A. Why, they showed me a great number of pictures down there.*

"Q. Well, did you look at them? A. *Yes, sir, I did. I looked through—I looked through a numerous lot of pictures down there.*

"Q. Well, about how many pictures did you have to look through, approximately? A. *Oh, I couldn't say that; I looked through all the pictures they had in those big large panels down there and never seen anybody in there I knew and then they took me to some other part of the building and showed me a number of pictures until I came to the picture of that gentleman there.*

317 Mo. Sup.—49.

"MR. BASS: Just a minute. I object to that and ask that it be stricken out.

"THE COURT: That will be stricken out.

"MR. BASS: I ask that the jury be instructed to disregard that.

"THE COURT: Gentlemen of the jury: I will ask you to disregard that *last* portion.

"MR. BOWCOCK: Q. Well, you looked through approximately how many pictures? A. Now—Oh, *I guess I looked through a thousand of them* down there—I guess; a number of them—a great many of them.

"Q. *And you came to one picture, did you?* A. *Yes, sir.*

"Q. And then you stopped—did you stop, or did you look through other pictures? Don't say what you said or anything, but did you stop then or look through others? A. *I looked through others.*

"Q. *And would you know that picture if you saw it now?* A. *Yes, sir, I would.*

"MR. BOWCOCK: *Mark this 'State's Exhibit A.'*

"Q. *I will ask you to look at 'State's Exhibit A' and state whether you saw that picture?*

"MR. BASS: *I will object to that as incompetent, irrelevant and immaterial.*

"THE COURT: Overruled.

"To which action and ruling of the court, defendant, by his counsel, then and there duly excepted and still excepts.

"A. *That is the man right there, yes, sir; that is the picture I looked at.*

"MR. BOWCOCK: *I will ask you whether or not that is a true representation of the man that held you up?* A. *Yes, sir, it is.*

"MR. BASS: I will object to that as incompetent, irrelevant and immaterial, and *secondary evidence.*

"THE COURT: Overruled.

"To which action and ruling of the court, defendant, by his counsel, then and there duly excepted and still excepts."

All this was put in as evidence in chief. The usual cross-examination follows. in which the witness said the place was (by reason of the street light) very light.

Pertaining to this same photograph, the State put on Lou E. Baker as· a witness. Baker said he had been photographer for the Police Department (city of St. Louis) for twenty-seven years. Then the following occurs:

"Q. I will show you 'State's Exhibit A' and ask you whether you took that photograph?

"MR. BASS: I object to that as incompetent, irrelevant and immaterial.

"THE COURT: Overruled.

"To which action and ruling of the court, defendant, by his counsel, then and there duly excepted and still excepts.

"A. I took it, yes, sir.

"MR. BOWCOCK: Now, I will ask you to state whether that, in your opinion, is a correct picture—true picture of the party that it·purports to represent?

"MR. BASS: I will object to that as incompetent, irrelevant and immaterial.

"THE COURT: Overruled.

"To which action and ruling of the court, defendant, by his counsel, then and there duly excepted and still excepts.

"A. *It was at the time.*

"MR. BOWCOCK: Sir? A. It was at the time.

"Q. That is what I mean, at the time? Now, whose picture is that? A. Sylvester Baldwin.

"MR. BOWCOCK: That is all.

"MR. BASS: That is all.

"MR. BOWCOCK: One moment. Where was this picture kept?

"MR. BASS: I object to that as incompetent, irrelevant and immaterial.

"MR. BOWCOCK: I am showing where he saw it first.

"THE COURT: Overruled.

"To which action and ruling of the court, defendant, by his counsel, then and there duly excepted and still excepts.

"MR. BOWCOCK: *Where was this picture kept?* A. *Kept in the Bertillon Room, police headquarters. .*

"Q. *Police headquarters at the Central District?* A. *Yes.*

"MR. BOWCOCK: That is all.

"THE COURT: *Did I hear you say the Bertillon Room?* A. *Yes, sir.*

"MR. BOWCOCK: The State offers this picture in evidence.

"MR. BASS: *I object to the introduction of the picture, for the reason, first, it hasn't been properly identified. Secondly, it is secondary evidence; thirdly, it is incompetent, irrelevant and immaterial; fourthly, it contains matter not in evidence.*

"THE COURT: I can't permit that evidence to go in—I can't permit the *back* portion of that.

"MR. BOWCOCK: No. We will only offer the *front* portion. Let the record show that only the picture on the front is offered in evidence,.or to be examined by the jury.

"MR. BASS: I object to the introduction under those circumstances, for the same reasons that I have just stated.

"THE COURT: Overruled. Now, gentlemen, I will ask you to just look at the photograph and not at the back of that picture.

"('State's exhibit A' was thereupon handed to the jury).

"To which action and ruling of the court, defendant, by his counsel, then and there duly excepted and still excepts.

"THE COURT: Just pass it along rapidly.

"MR. BOWCOCK: That is all.

"MR. BASS: That is all.

"MR. BOWCOCK: The State rests."

These two witnesses (Roy Smith and Lou E. Baker) made plaintiff's case, if it was made.

The only evidence in behalf of the defendant were some *alibi* witnesses. Upon close of defendant's case, both sides rested. In other words, there was no further evidence offered by the State. So that all this evidence concerning the photograph, and where it was kept, was introduced as primary evidence, or at least as evidence in chief. Such is the time, and such are the surrounding circumstances, when these objections were made, and in the light of these, their sufficiency must be determined.

We can best reach the question by a process of elimination. The last opinion in Division averred the competency and relevancy of this evidence on the ground that it corroborated Smith's testimony on the stand. In other words Smith (in fact and in practice) says to the jury that "you should believe my testimony as to identity, because I identified his picture for the police force, two days after the robbery."

Recollecting that there was no attempt to impeach Smith, or otherwise discredit him, the statement of Smith as to his prior act of "identifying" the picture was absolutely irrelevant to any issue in the case. [People v. Jung Hing, 212 N. Y. 393.] The case is also reported in 38 Annotated Cases, 1915 D, at page 333, and following at page 338 there is splendid note on the question. The learned Annotator first says: "The proposition goes unchallenged in every jurisdiction save one that the prior consistent statements of a witness who has not been impeached are not admissible in evidence for the purpose either of corroborating his testimony or of increasing his credibility."

Under this statement follows a list of cases from England, United States Supreme Court, and thirty-one states, including Missouri. Those cited from Missouri are: "Riney v. Vanlandingham, 9 Mo. 816; State v. Grant, 79 Mo. 113, 49 Am. Rep. 218; State v. Levy, 90 Mo. App. 643. See also State v. Hendricks, 172 Mo. 654, 73 S. W. 194; State v. Sharp, 183 Mo. 715, 82 S. W. 134; State v. Brown, 247 Mo. 715, 153 S. W. 1027."

The last case, cited supra, State v. Brown, 247 Mo. l. c. 726-727, an opinion by WALKER, J., rules that prior statements cannot be shown to corroborate an unimpeached witness, and wherein Judge WALKER approves the following from Brown v. People, 17 Mich.

l. c. 435, thus: "It was bolstering up his statement in court by proof of a like statement out of court; and it was therefore open to all the objections to which hearsay evidence is usually subject."

The first case cited, as will be seen, is that of Riney v. Vanlanding-ham, 9 Mo. 816. This is an opinion by Judge NAPTON. At page 821 of 9 Missouri it is said:

"The testimony in relation to Vanlandingham's statements not under oath, corroborative of his statement on the trial of the case of Lowen v. Riney, was inadmissible. It is well settled in England, that what a witness said not upon oath, is inadmissible to confirm what he said under oath. Rex v. Parker, 3 Doug. 242. In the case cited, BULLER, J., denied the doctrine of Luthrell v. Reynell, 1 Mod. 283, and the authority of Hawkins (2 Hawk. P. C. 431) who had maintained the competency of such proof. In accordance with this decision of BULLER, which he also asserts in his treatise (Buller's N. P. 249), is the opinion of Starkie, Phillips and Greenleaf. Starkie says 'that the witness having given a contrary account, although not upon oath, necessarily impeaches either his veracity or his memory; but his having asserted the same thing does not in general carry his credibility farther than, nor so far as his oath.' In Green-leaf's Evidence the same doctrine is stated: 'Evidence that the witness has on other occasions made statements similar to what he has testified in the cause is not admissible; unless, where a design to misrepresent is charged upon the witness, in consequence of his relation to the party, or the cause; in which case, it seems, it may be proper to show, that he made a similar statement before that rela-tion existed.' [Greenleaf's Ev. 521.] .

"In relation to this sort of evidence, Phillips makes the following pertinent remarks: 'It may be observed on this kind of evidence in general, that a representation without oath, can scarcely be con-sidered as any confirmation of a statement upon oath. It is the oath that confirms; and the bare assertion that requires confirmation. The probability is, that in almost every case the witness who swears to certain facts at the trial, has been heard to assert the same facts before the trial; and it is not so much in support of his character that he has given the same account, as it would be to his discredit that he should ever have made one different. If a witness has made a statement a hundred times in one way, and a hundred times an-other way, directly contrary, the only inference is that he is totally destitute of credit.' [1 Phil. Ev. 308.]

"There are, it is true, very respectable authorities which maintain the admissibility of such testimony. [People v. Vane, 12 Wend. 79; McNally's Ev. 378; Cooke v. Curtis, 2 Harr. & M. H. 93; 1 Serg. & Rawle, 536; 2 Wash, R. 148; 1 Peters' C. C. R. 203.] But we are disposed to consider the doctrine of the elementary writers, above

referred to, as the correct and safe rule. Testimony of this character is very easily manufactured, and it is especially objectionable in a case like this, when it is made *post litem motam.*"

The intermediate cases support the rule, that prior consistent statements are inadmissible prior to impeachment. Thus SHERWOOD, J., in State v. Grant, 79 Mo. l. c. 133, says:

"Evidence in corroboration of a witness prior to attack or impeachment, is obviously inadmissible. [State v. Thomas, 78 Mo. 327.] If, however, such attack be made on the character of the witness, it is then admissible to prove that the witness has made statements consistent with those made as a witness. [March v. Harrell, 1 Jones (N. C.), 329; French v. Merrill, 6 N. H. 465; Coffin v. Anderson, 4 Blackf. 395; Jackson v. Etz, 5 Cow. 314.] And it is also held that for a similar corroborative purpose evidence is admissible of what the witness swore at a former trial. [Henderson v. Jones, 10 S. & R. 322.] Taking this to be the correct doctrine, and it is amply supported by authority, then the testimony of Montgomery as to what Canfield swore at a former trial would have been admissible, as well as of other witnesses as to prior consistent statements. But this testimony seems to have been introduced *anticipatory of an attack* on the character of Canfield by the State, and, therefore, *was clearly inadmissible.*"

Until a witness is assailed his testimony cannot be bolstered up by showing good reputation, or by prior consistent statements. [Orris v. Rock Island Ry. Co., 279 Mo. l. c. 18 et seq.]

Thus in a criminal case, State v. Fogg, 206 Mo. l. c. 716, we have said: "It is urged by counsel for appellant that the court committed error in the exclusion of the testimony offered to prove the defendant's reputation in the neighborhood in which he resided for truth and veracity. This testimony was properly excluded for the reason that the defendant's reputation for truth and veracity had not been assailed, and the mere fact that there was a conflict between his testimony and that of the prosecuting witness is not in contemplation of law such an attack upon his reputation for truth and veracity as would warrant the court in admitting the testimony as to such reputation, for the purpose of bolstering up the testimony of the defendant, when such reputation had been in no way assailed. As applicable to this proposition we know of no rule of law which makes any distinction between the defendant as a witness and any other witness in the case; therefore, we take it that the rule as announced in State v. Thomas, 78 Mo. 327, is decisive of this question."

In the Jung Hing case, supra, to which this elaborate and thorough note is made by the learned annotator, the question is ably discussed, and from it we quote, thus: "The proposition goes unchallenged in every jurisdiction save one that the prior consistent statements of a

witness who has not been impeached are not admissible in evidence for the purpose either of corroborating his testimony or of increasing his credibility.''

The learned Annotator of Jung Hing's case, in his note further says:

''By a number of courts prior assertions of an unimpeached witness harmonious with his testimony are summarily condemned as hearsay evidence. [Rex v. Parker, 3 Dougl. 242, 26 E. C. L. 95; Ellicott v. Pearl, 10 Pet. 412, 9 U. S. (L. Ed.) 475; Fallin v. State, 83 Ala. 5, 3 So. 525; Chilton v. State, 105 Ala. 98, 16 So. 797; People v. Johnson, 91 Cal. 265, 27 Pac. 663; People v. Schmitt, 106 Cal. 48, 39 Pac. 204; Shamp v. White, 106 Cal. 220, 39 Pac. 537; Connor v. People, 18 Colo. 373, 33 Pac. 159, 36 Am. St. 295, 25 L. R. A. 341; Powers v. Cary, 64 Me. 9; Brown v. People, 17 Mich. 429, 97 Am. Dec. 195; State v. Levy, 90 Mo. App. 643; Ranck v. Brackbill, 209 Pa. St. 499, 58 Atl. 884; Oliver v. Com., 77 Va. 590; O'Toole v. State, 105 Wis. 18, 80 N. W. 915.] See also State v. Petty, 21 Kan. 54; Haynes v. Com., 28 Grat. (Va.) 942; Jessie v. Com., 112 Va. 887, 71 S. E. 612. This view was taken in Rex v. Parker, 3 Dougl. 242, 26 E. C. L. 95, the first case to recognize the rule. It therein appeared that the Crown attempted to strengthen an information made under oath by a witness who had since died by previous statements made by him in conformity with his deposition. This evidence, however, was excluded as hearsay and hence of no weight.

''Moreover, the prior statements of a witness, being mere hearsay evidence, obviously can add no weight to his solemn declaration made under oath and in the presence of the court. They are therefore *irrelevant and valueless*. [Western Assur. Co. v. Stoddard, 88 Ala. 606, 7 So. 379; Rogers v. State, 88 Ark. 451, 115 S. W. 156, 41 L. R. A. (N. S) 857; People v. Schmitt, 106 Cal. 48, 39 Pac. 204; Connor v. People, 18 Colo. 373, 33 Pac. 159, 36 Am. St. Rep. 295, 25 L. R. A. 341; Woodstock First Nat. Bank v. Mansfield, 48 Ill. 494; Stave v. Egbert, 125 Ia. 443, 101 N. W. 191; Powers v. Cary, 64 Me. 9; Burns v. Stuart, 168 Mass. 19, 46 N. E. 399; Williams v. State, 79 Miss. 555, 31 So. 197; Boyd v. State, 84 Miss. 414, 36 So. 525; Schattman v. American Credit Indemnity Co., 34 App. Div. 392, 54 N. Y. Supp. 225; Ranck v. Brackbill, 209 Pa. St. 499, 58 Atl. 884.] See also Sidelinger v. Bucklin, 64 Me. 371. So, in Powers v. Cary, 64 Me. 9, it was said: 'The affidavit and the answers in the deposition of the witness were under oath—under the highest sanction for truth known to the law. It is no corroboration to prove that when free from these sanctions she had made similar statements. It is an attempt to corroborate higher and more reliable testimony by an inferior description of proof—by what is hearsay''

And further the Annotator says: "In applying the rule stated that prior consistent statements of an unimpeached witness are not admissible, the courts exclude written as well as oral declarations." The Riney case, 9 Mo. 816, supra, was a case disposing of written prior statements, and our rule accords with the general run of the cases, in excluding the evidence.

. All this evidence of Smith as to what he did, and what occurred, at the Central Police Station, was relevant to no issue involved in the case. Being relevant to no issue, then in the case, the objection of "irrelevant" was good. When counsel use the words "irrelevant" and "immaterial" both counsel and court understand that counsel mean "irrelevant and immaterial to any issue involved in the case." Such is the meaning of the objection. This Court en Banc (Ellison case, supra, 287 Mo. 1. c. 155) said "such evidence is open to hardly any other than a general objection."

**Irrelevancy.**

Judge J. T. BLAIR had just been discussing the objections of "irrelevancy" and "immateriality," and had approved the rule, that when the evidence was relevant to no issue, these general objections were good. So, under the overwhelming weight of authority this evidence was not relevant upon the matter of corroborating the witness Smith.

Nor was this evidence relevant on the issue of identification. The same learned Annotator, 38 Ann. Cases, 1. c. 341, says: "In criminal cases, too, evidence of the extrajudicial identification of a defendant as the wrongdoer is excluded. [Warren v. State, 103 Ark. 165, Ann. Cas. 1914B 698, 146 S. W. 477; State v. Egbert, 125 Ia. 443, 101 N. W. 191; People v. Kennedy, 164 N. Y. 449, 58 N. E. 652; Reddick v. State, 35 Tex. Crim. 464, 34 S. W. 274, 60 Am. St. Rep. 56; Moore v. State, 40 Tex. Crim. 439, 50 S. W. 942; Murphy v. State, 41 Tex. Crim. 120, 51 S. W. 940; Bowen v. State, 47 Tex. Crim. 137, 82 S. W. 520; O'Toole v. State, 105 Wis. 18, 80 N. W. 915.] And see the reported case. See also State v. Houghton, 43 Ore. 125, 71 Pac. 982. Compare Christie's Case, 10 Crim. App. (Eng.) 141; Turman v. State, 50 Tex. Crim. 7, 95 S. W. 533. Thus in Warren v. State, supra, the defendant was on trial for burglary and assault with intent to commit rape. The State introduced two police officers to testify that the identifying witness for the State had before the trial identified the defendant as the perpetrator of the crime. After discussing the question of extrajudicial identification generally, the court said: 'Nowhere, so far as we can ascertain, has it even been held a so-called "extrajudicial identification" is admissible as original testimony; and it was, therefore, in any view of the case, inadmissible, for there was no attempt to impeach the witness by contradictory statements, or otherwise. The testimony was introduced as original evidence, and it was clearly inadmissible, for it was not competent to corroborate

the identifying witness by proof of former identification.' The
Michigan court, however, has inclined towards a different holding.
People v. Wallin, 55 Mich. 497, 22 N. W. 15, wherein evidence of a
prior identification of the defendant by the prosecuting witness was
admitted as showing that the witness had been continuous in his
belief.

"Also an identifying witness cannot be corroborated by evidence of
a former accurate description of the defendant by him. [People
v. Johnson, 91 Cal. 265, 27 Pac. 663; People v. McNamara, 94 Cal.
509, 29 Pac. 953; People v. LuKoszus, 242 Ill. 101, 89 N. E. 749;
Com. v. James, 99 Mass. 438; Com. v. Fagan, 108 Mass. 471; Mallory
v. State, 37 Tex. Crim. 482, 36 S. W. 751, 66 Am. St. Rep. 808.
Compare People v. Morrigan, 29 Mich. 4.]"

The value of this ruling by the Arkansas court is that such identi-
fications are not *original evidence* in any case. The Arkansas court
is well sustained by authority. This case has been annotated (War-
ren v. State, 103 Ark. 165) in 32 Ann. Cases, page
**Extrajudicial**     700, under the head of "extrajudicial identification."
**Identification.**   Speaking of the Warren case, supra, and the ruling
of the Arkansas court, the Annotator says: "The holding of the
reported case that so-called 'extrajudicial identification' in criminal
cases is not admissible as original testimony is amply supported by
authority. See People v. Johnson, 91 Cal. 265, 27 Pac. 663; People v.
McNamara, 94 Cal. 509, 29 Pac. 953; State v. Egbert, 125 La. 443,
101 N. W. 191; State v. Langford, 45 La. Ann. 1177, 14 So. 181,
40 Am. St. Rep. 277; Com. v. Fagan, 108 Mass. 471; State v. Hough-
ton, 43 Ore. 125, 71 Pac. 982; Reddick v. State, 35 Tex. Crim. 466,
34 S. W. 274, 60 Am. St. Rep. 56; Murphy v. State, 41 Tex. Crim.
120, 51 S. W. 940. In State v. Houghton, supra, a prosecution for
robbery, wherein it was held to be error to admit the testimony of a
witness that the prosecuting witness, the morning after the robbery,
identified a photograph of the defendant in the rogue's gallery at the
police station as that of one of the parties engaged in the commission
of the crime, the court said: 'The testimony that Balch identified the
defendant's photograph as that of one of the guilty parties was mere
hearsay, and, under the circumstances, prejudicial to the defendant.
The crime for which he was being tried was committed at night, and,
as he was a stranger to the prosecuting witness, an important and
material question in the case was whether Balch was able to identify
him as one of the guilty parties. The fact that the next morning
Balch was shown by the detective a photograph of the defendant,
and identified it as a picture of one of the parties concerned in the
commission of the crime, was damaging testimony, in view of the
ruling of the court that it "was material evidence in the case." It
amounted to nothing more than an identification or description of

the culprit, and, as it was not in the presence of the defendant, was hearsay evidence and incompetent. This is in accordance with oft-repeated holdings of the courts. Thus, in People v. Johnson, 91 Cal. 265, 27 Pac. 663, and People v. McNamara, 94 Cal. 500, 29 Pac. 953, the testimony of an officer as to the description of the culprit given him by the prosecuting witness before the arrest in each instance was held to be hearsay, and its admission prejudicial error, for which the cases were reversed. Again, in Murphy v. State, 41 Tex. Crim. 120, 51 S. W. 940, it was held that on a trial for murder it was incompetent and inadmissible, as original evidence, to prove by a witness who was present at the killing, and only saw defendant for an instant at that time, that subsequently she picked him out and identified him at the jail, among several other inmates, as the person who committed the murder. See, also, in Com. v. Fagan, 108 Mass. 471, evidence that the person who was robbed described the robber to the officer, and that the officer thereupon went in search of the defendant, was held hearsay, and not admissible to identify the robber with the defendant. And in O'Toole v. State, 105 Wis. 18, 80 N. W. 915—a case somewhat similar to the one at bar—two policemen testified to the effect that the prosecuting witness on the day after the robbery stated that plaintiff in error was the man who committed it; but the court held the admission of such testimony error, saying: "It was placing before the jury an unsworn declaration under circumstances likely to give it great weight. The darkness and confusion surrounding the robbery justified an argument upon the improbability of the prosecutor's ability to have seen his assailant sufficiently to identify him, and the declaration of defendant's identity when presented among others before complainant must be weighed with the jury upon the facts so declared, and therefore prejudiced the accused. Error was thus committed for which the judgment must be reversed." The admission of the testimony that the prosecuting witness recognized defendant's photograph at the police station the morning after the robbery as that of one of the parties engaged in its commission was therefore error.' "

The evidence of Smith as to what occurred at the police station on January 5th, was not competent to corroborate Smith, in his identification, and was not original evidence on identification. So at the time, the evidence was relevant to no issue in the case, and the objection made was good. If it was not original evidence, as McCulloch, C. J., of Arkansas, in Warren's case, ruled (and the authorities sustain him), and, if it could not be used to corroborate Smith, for what purpose was it *relevant*, when offered? Absolutely none. The objection to this evidence, under the case law, was sufficient, and there was error (very prejudicial in character) committed by the trial court. Guilty or innocent (it makes no difference which) the

defendant was entitled to a fair trial under the established rules of law. This he did not get.

IV. We cannot pass the two propositions discussed, supra, without adding just a bit more. First, we rule that all that Smith testified to about what he did at the city jail as to identifying defendant's photograph, was evidence offered to bolster up his **Original** evidence as to identity while a witness on the stand, and **Evidence.** was not only not relevant to any issue, but was highly prejudicial. In 10 Ruling Case Law, sec. 134, page 960, it is said: "Nor can evidence of what a witness has said out of court be received to fortify his testimony. It violates a first principle in the law of evidence to allow a party to be affected, either in his person or his property, by the declarations of a witness made without oath. And, besides, it can be no confirmation of what the witness has said on oath, to show that he has made similar declarations when under no such solemn obligation to speak the truth."

In the second place, we rule that these extrajudicial identifications are not original testimony as to the identity of the party, and inadmissible and irrelevant as such. McCulloch, C. J., in Warren v. State, 103 Ark. 165, after citing the cases, and after saying that such identifications are "generally held to be inadmissible," adds at page 171: "But nowhere, so far as we can ascertain, has it ever been held that a so-called 'extrajudicial identification' is admissible as original testimony; and it was, therefore, in any view of the case, inadmissible, for there was no attempt to impeach the witness by contradictory statements, or otherwise. The testimony was introduced as original evidence, and it was clearly inadmissible, for it was not competent to corroborate the identifying witness by proof of former identification."

The cases cited by the learned Chief Justice in Warren's case, as well as those cited in note to Warren's case, 32 Ann. Cas. 701, show that the great weight of authority is opposed to the admission, as original evidence of identity, of such extrajudicial identifications. So on no ground was this evidence admissible.

V. Passing now to the testimony of the witness Baker. What we have said, supra, as to Smith's testimony, may or may not apply to the first portion of Baker's testimony. We shall not stop **Place** to discuss that portion of his evidence. There had been **Where** no issue raised as to whether or not the picture (Exhibit A) **Kept.** was the picture of defendant, but there was no objection to much of the first portion of the testimony. The latter portion is so clearly not relevant to any issue that we shall be content with a discussion of it. That portion reads:

"MR. BOWCOCK: One moment. Q. *Where was this picture kept?*

"Mr. Bass: *I object to that as incompetent, irrelevant and immaterial.*

"Mr. Bowcock: I am showing where he saw it first.

"The Court: Overruled." (Objection saved.)

"Mr. Bowcock: Where was this picture kept? A. Kept in the Bertillon Room, police headquarters.

"Q. Police headquarters at the Central District? A. Yes.

"Mr. Bowcock: That is all.

"The Court: Did I hear you say Bertillon Room? A. Yes, sir."

If it be conceded (a matter we do not now pass upon) that Baker's testimony as to taking the picture, and that it was the picture of the defendant, was competent, there was no excuse for the latter portion of his evidence, as to where the picture was kept. What issue in the case did that tend to prove? To what issue in the case was proof of where the picture was kept relevant? Absolutely none. Baker had said he took the picture, and that it was the picture of defendant, and that fact had not been questioned up to the date of the general objection to proof as to where the picture was kept. Such evidence of Baker was not relevant to any issue in the case, and under the rules we have discussed supra, the general objection of irrelevancy was good. It is clear what the real purpose was in its introduction. And the court seems to have been in thorough sympathy, for we read in the record: "The Court: Did I hear you say Bertillon Room?"

The law fixes the character of pictures to be found in Bertillon Rooms. [R. S. 1919, secs. 4140 to 4143, both inclusive.] In Section 4140 it is provided that any person convicted of a felony, whose sentence has not been reversed, shall be subject to all the things (by way of identification) allowed by the Bertillon system. See also Sections 8955 and 8964, Revised Statutes 1919, wherein is authority for the establishment of a Bertillon system of identifying convicted criminals in cities of 500,000 or over. So, under the law (presumably known by all citizens), the defendant's picture was in the Bertillon Room of the city of St. Louis, wherein it had no place, unless, under Section 4041, he had been convicted of a felony, and his conviction had not been reversed. This made this evidence highly prejudicial. The place where the picture was kept was utterly immaterial upon the question as to whether or not it was the picture of defendant. Nor did it tend to prove defendant committed the crime. It could be relevant to no issue in the case, and the court should have promptly sustained the objection that the evidence was irrelevant and immaterial. Its failure to do so was prejudicial and reversible error.

VI. Not only did the counsel for the State persist in introducing the poisonous evidence we have just discussed, but his whole con-

duct was unfair. This appears in every line of his cross-examina-
tion of defendant's five witnesses, and his argument of
**Argument** the case. In the argument he berated in the worst possi-
**to Jury.** ble manner the defense of *alibi*. Alibi is a legitimate de-
fense, and one recognized by the law.

He said among other things: "Do you think that that boy would
tell you a story? And do you think he could select, among hundreds
and hundreds of pictures, the very man, when there was no excite-
ment? Alibi? We never have a robbery case in St. Louis—not one
out of a dozen—that there isn't an alibi." It may be that this is a
legitimate comment (although in the form of testimony as to condi-
tions in St. Louis by the unsworn prosecutor), because it is general
knowledge that alibi is the usual defense in such cases. In fact it
is about the only defense.

However the prosecutor steps beyond all reasonable bounds when
he said: "It is like the old Continental Congress, they had to hang
together or they would hang separately. Now, remember this: These
fellows—you can draw this inference: These fellows must hang to-
gether; if they don't hang together, we will hang them separately,
and that is only when they hang together. Now, there is one thing
you can do to stop crime, and that is punishment. You can give
five years, you can give ten years, twenty years or higher, but pun-
ishment only will stop crime.

"Mr. Bass: I want to except to that further remark made by
counsel for the State, which is not borne out by the record, and that
is, these men hang together or some of them would hang separately.
Now, I except to that remark and ask that counsel be reprimanded
for that.

"The Court: It will be overruled.

"To which action and ruling of the court, defendant, by his coun-
sel, then and there duly excepted and still excepts."

There isn't a thing in this record to justify this assault on the five
witnesses for the defendant. Not one of them stands impeached.
The severe cross-examination brought forth nothing to justify any
such comment. Hurley, it is true, was proprietor of a soft-drink
parlor, but he was prominent enough to be a committeeman for his
ward in the Republican city organization—the City Central Commit-
tee. His wife was one of the five witnesses. The evidence of these
five persons was fair upon its face. There was not a thing in the
whole case to justify the attack made in the argument. The inuen-
does carried by this argument deserved rebuke, at least, at the hands
of the court.

When all is considered this man has not had that fair and impartial
trial contemplated by the law. Whether he be guilty or innocent he

is entitled to such a trial. From it all, we have no hesitancy in saying that the judgment should be reversed and the cause remanded. It is so ordered. All concur, except *Walker*, C. J., who dissents.